DAVIS, Respondent v. INTERSTATE MOTOR CARRIERS AGENCY et al., Appellant

(178 N.W.2d 204)

(File No. 10671. Opinion filed June 9, 1970)

**William L. Dickey,** Sioux Falls, for plaintiff and respondent.

**Woods, Fuller, Shultz & Smith, and J. B. Shultz,** Sioux Falls, for defendants and appellant.

BIEGELMEIER, Judge.

This is an appeal from an order denying a motion to vacate a default judgment entered against defendant Little Audrey's Transportation Company, Inc. Plaintiff first named as defendants Interstate Motor Carriers Agency (IMCA) on whom service was made through the Insurance Commissioner June 6, 1968 and Underwriters at Lloyds and British Companies (Lloyds) who were never served with process. An amended complaint and summons dated June 25, 1968 added TBL Adjustors (TBL), later dismissed by plaintiff, and Little Audrey's Transportation Company, Inc. (Little Audrey) as defendants. These were again served on IMCA through the Insurance Commissioner on June 28, 1968. Service of the amended summons and complaint on Little Audrey, a foreign corporation, was obtained by admission of service of two copies by the Secretary of State on July 8, 1968, who stated therein that one copy was mailed that day to Little Audrey at Fremont, Nebraska by registered mail. It may be doubted that the amended complaint states a cause of action against Little Audrey as an insurer or on any theory.

There is some confusion in the proceedings shown by the record; some of it may affect Little Audrey and some may not. On July 9, 1968, plaintiff's attorney made a motion for default judgment against "Defendant" apparently based on his affidavit stating the two services of the summons and complaint on the Insurance Commissioner on June 6, 1968, and of the amended summons and complaint on June 28, 1968, and nonappearance of IMCA; July 10th the trial court entered a default judgment against IMCA for $20,793 for plaintiff's damages, $3,000 attorney's fees and $8.50 costs. On motion of plaintiff's attorney the court set aside the IMCA judgment on July 18th and later, pursuant to further motions by plaintiff's attorney, entered another default judgment against IMCA on August 19th for the same amounts, except $13.50 costs or a total of $23,806.50.

On August 8, 1968, which was 31 days after the Secretary of State was served with process for Little Audrey, plaintiff moved for and the court entered a judgment by

default against Little Audrey for the same $20,793 damages, $3,000 attorney's fees and $13.50 costs and a like total as against IMCA of $23,806.50.[1]

■ Having learned of the entry of the August 8, 1968 judgment, Little Audrey on August 15th filed what is termed its "first" motion to vacate the judgment and for leave to interpose an answer. It was supported by two affidavits which will be mentioned later. The hearing held on August 19, 1968, resulted in an order denying the motion, but stated upon motion and after hearing and for good cause appearing the court would rehear the question of damages. Little Audrey then applied to this court for a Writ of Prohibition against plaintiff and the circuit court to restrain them from further proceedings on the judgment which, after a hearing, the court denied on December 16, 1968. The next day Little Audrey made its "second" motion to the circuit court for vacation of the default judgment which was heard and denied and this appeal is from that order.

RCP 60(b) now also SDCL 15-6-60(b) provides:

> "On motion and upon such terms as are just, the court may relieve a party * * * from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect".

The wording in (1) is the same as that in prior statutes and rules of court on this subject, but omits the words limiting court action "in its discretion". See SDC 33.0108. Appellant and respondent agree that there are over 50 cases in this jurisdiction relating to vacation of default judgments under various fact situations; some are cited in the note to SDCL 15-6-60(b). Before discussing that point, the evidence upon which the order was based being entirely by affidavits, our

---

1. The transcript of the evidence taken to obtain the default judgment against IMCA on July 10th and used by plaintiff to support the judgment against Little Audrey, does not support that judgment. Cf. War Finance Corp. v. Byrum, 49 S.D. 208, 206, N.W. 1005, RCP 55(b). The testimony refers only to IMCA as the insurer or insurance company.

review is unhampered by the rule that a trial judge who has observed the demeanor of the witnesses is in a better position to intelligently weigh the evidence than the appellate court. Credit Management Service, Inc. v. Wendbourne, 76 S.D. 80, 72 N.W.2d 926; Brewster v. F. C. Russell Co., 78 S.D. 129, 99 N.W.2d 42.

Little Audrey's president made affidavit that on June 28, 1968, the company received copies of the summons and amended complaint; they were immediately sent to United Transportation Adjustors, a firm in Chicago which handled all claims against Little Audrey, which sent them on to Toplis & Harding, an adjusting firm in New York. He was informed that firm would take care of it; that from time to time he had telephone conversations with U.T.A. representatives who advised him T. & H. were continuing to handle the lawsuit and he need not concern himself with it and he assumed the interests of his company were being protected; that Little Audrey had a good defense to plaintiff's claim. An officer of U.T.A. made affidavit that it received and sent the summons and amended complaint on to T. & H. who were agents of IMCA and Lloyds with a demand that defense be provided in the lawsuit for Little Audrey under the policy issued to it; that on July 18th an officer of U.T.A. wrote T. & H. asking what developments there had been and again requested they provide defense to the suit; that by a letter from T. & H. received by U.T.A. August 2nd a photo copy of which was attached Little Audrey was led to believe T. & H. were in the process of bringing the matter to a conclusion by settlement; relying on the information that the only judgment then taken was against IMCA and the T. & H. efforts to settle the claim, it took no action; it learned of the August 8th judgment on August 12th. The letter of July 30th from T. & H., which appears to be an international firm of adjustors, advised Little Audrey the policy covered only physical damage to the equipment and there was no defense clause in it; that its South Dakota counsel had advised T. & H. that judgment had been taken against IMCA only;[2]

---

2. This judgment was not then in existence as it had been set aside on July 18th; it was reentered August 19th.

that T. & H. had for some time been attempting to adjust the loss with Davis, but his demands were unwarranted and proofs of loss had been submitted to Davis but neither were acceptable despite the fact the demands in the amended complaint were within the figures submitted in the final proof. It ended "We are still trying to bring this matter to a conclusion by settlement and when this has been accomplished you will be advised".

The "second" motion was based on these affidavits, one by W. H. Osborn, Little Audrey's secretary, and one by different legal counsel. The Osborn affidavit stated Little Audrey was a corporation with an I.C.C. permit to engage in hauling perishable products, all business is handled on a lease basis with contractors; when a new contractor came to work for them under lease, it inquired of his insurance coverage, advised him coverage was available through a master policy at considerable savings to cover physical damage on his equipment; that Davis indicated he desired this group policy coverage and to pay the premiums by monthly deductions from his settlements. Little Audrey is not in the insurance business in any way; it only made the insurance coverage available to Davis; counsel's affidavit stated he had investigated the matter, conferred with defendant and was of the opinion it had a meritorious defense set up in an answer attached.

Plaintiff's showing was by affidavit of counsel; most of it deals with efforts to locate and serve various defendants and obtain a copy of the policy in which plaintiff was insured. From the exhibits attached it appears plaintiff's prior counsel in April wrote a letter addressed to Little Audrey at Salt Lake City asking for a copy of the policies S-6228/9 which its Director of Safety answered by stating he had advised the "insurance company of your request. If you do not receive an answer to your request, please contact me, and I will follow up on it." Plaintiff changed counsel who on May 17th wrote Little Audrey asking the policies be sent to him; Stevens' answer of the 20th said he had forwarded this letter to IMCA in New York for handling.

■ Plaintiff does not dispute the facts in the Little Audrey showing. What pervades his argument is his claim of difficulty in obtaining a copy of the master policy, the name of the actual insurer, delay and lack of cooperation by some of defendants in his quest. He concluded and urged on the trial court with considerable vigor that their actions fostered disrespect for his pleadings and judicial procedures. Counsel in his haste to bring the "matters to a speedy" conclusion may have contributed to some of the delay. Examination of the certificates of insurance attached to the complaint certified "'INTERSTATE MOTOR CARRIERS AGENCY (address given) has provided Insurance on behalf of: OPERATOR: Eldon C. Davis" for the carrier Little Audrey on the equipment then described for one amount on the tractor and another on the trailer for "Collision with the Underwriters at Lloyds and British Companies, Policy #'s S-6228/9". It is sufficiently clear IMCA as agents or brokers had placed this insurance on plaintiff's equipment with Lloyds by virtue of a master policy insuring Little Audrey. These are well known methods in the business of insurance as evidenced by group life, health and similar other insurance. The IMCA letter of July 29th to the South Dakota Insurance Commissioner, a part of plaintiff's showing, outlines and describes the transaction and is referred to by plaintiff's counsel as "the best description Affiant has of the nature of the insurance coverage". While that affidavit claims Little Audrey was still a necessary party as it was covered by a master policy and plaintiff's claim apparently must in some way be submitted through it, that alone did not make it an insurer.[3]

---

3. Titled and filed in the same action on October 7th Lloyds filed an Application under RCP 67(c) for an order designating a depository to hold $15,000 which it alleged was the loss suffered by plaintiff and due him under the physical damage policy which it had issued under the numbers stated in the complaints; that the loss had been adjusted and Lloyds and plaintiff had agreed the amount of physical damage was $15,000. The court entered an order designating a depository and upon proceedings by plaintiff the court on notice directed payment thereof to counsel for plaintiff and a lien holder.

That plaintiff caused the summons to be served on the Insurance Commissioner for IMCA as an Unauthorizad Insurer, SDCL 58-8, and on the Secretary of State for Little Audrey as a foreign corporation indicates his distinction between these two defendants, yet plaintiff asked for and the court's judgment against Little Audrey granted $3,000 attorney's fees as permitted by SDCL 58-12-3 as against an insurance company. Plaintiff therefore assumed an inconsistent posture in serving process on Little Audrey as if it were not an Unauthorized Insurer or insurance company, but at time of judgment contended it was and proved and requested fees as against such company. Both counsel have cited opinions of the Dakota Territorial Court from Griswold Linseed Oil Co. v. Lee, 1 S.D. 531, 47 N.W. 955, to Ackerman v. Burgard, 79 S.D. 119, 109 N.W.2d 10, including decisions where the default judgment was set aside or upheld in the trial court and affirmed or reversed on appeal. Some are cited in the Ackerman v. Burgard opinion.

■ "As often stated, each case of this character must be determined from the particular facts and circumstances presented, and no purpose would be served in discussing the facts in the several cases presented to this court." Credit Management Service Inc. v. Wendbourne, 76 S.D. 80, 72 N.W. 2d 926. The neglect must be excusable and the term excusable neglect has no fixed meaning. Though it has omitted the phrase, RCP 60(b) gives trial courts a wide discretion to relieve of default which should " 'be exercised by them in the same liberal spirit in which the section (now Rule) was designed, in furtherance of justice and in order that cases may be tried and disposed of upon their merits.' " Gunvordahl v. Knight, 73 S.D. 638, 47 N.W.2d 561, quoting from Griswold Linseed Oil Co. v. Lee, supra. While differing slightly as most controversies do, the facts here are like those in Ackerman v. Burgard, supra, where, as here, defendant Little Audrey promptly delivered the summons to the agent for his insurance carrier, who sent it on to the insurance company and made inquiries of its status and was assured negotiations were under way to settle the claim and advised plaintiff's claim in the amended complaint was within the figures submitted in proof of loss, that they were still trying

to conclude the claim by settlement and when accomplished they would be advised.

■ The rule that when a judgment has been rendered by default against a defendant who is in default because he relied on another person to attend to his defense and who has neglected to do so, the default judgment will be set aside in the sound discretion of the court on the ground of excusable neglect, Ackerman v. Burgard, supra, also applies to a defendant who has turned over the process for disposition to the party who is to pay the loss and who has advised defendant negotiations are under way to settle. Plaintiff took judgment the first day after default and for attorney's fees under the Insurance Code (SDCL 58-12-3) and before the time permitted by the Insurance Code (SDCL 58-8-11) as no affidavit of compliance was filed as to Little Audrey. For these reasons and the confused state of affairs in this record, we conclude the relief asked for by Little Audrey should have been granted and it was an abuse of discretion to deny it.

No appeal was taken from the order denying the first application to set aside the judgment; the appeal is from the order denying the second application. The time for appeal from the first order may have expired (but see SDCL 15-26-2) and plaintiff questions the right of Little Audrey to appeal from the second order. The court has considered and discussed this situation in several cases involving default judgments. Fisk v. Hicks, 29 S.D. 399, 137 N.W. 424; Western Surety Co. v. Boettcher, 36 S.D. 583, 156 N.W. 68; Boshart v. National Benefit Ass'n Inc., 65 S.D. 260, 273 N.W. 7.[4]

■ From our cases it appears a motion to set aside a default may be renewed if upon a new state of facts without leave of court but when based on the same facts, the hearing of the motion is discretionary with the court and leave must

---

4. But see First National Bank & Trust Co. v. Kirby, 62 S.D. 489, 253 N.W. 616, where the court held the trial court was without authority to rehear and vacate a prior order discharging an attachment.

be obtained. The Little Audrey second motion was more detailed in the showing of excusable neglect plus a proposed answer and affidavits of an officer and present counsel that defendant had a meritorious defense to the action, absent from the first motion.[5]

In Olson v. Advance Rumely Thresher Company, 43 S.D. 90, 178 N.W. 141, the court quoted from Goldenberg v. Adler, 123 N.Y.S. 387, that

" 'When such a motion is renewed at the same term, before the same judge, and entertained by him, it is regarded as having been made upon his implied leave' "

and in Boshart v. National Benefit Ass'n, 65 S.D. 260, 273 N.W. 7, defendant made application to set aside a judgment taken by nonappearance of counsel at the trial. The judgment was not in terms set aside, but evidence on the merits was introduced by defendant. The trial court thereafter denied this motion. On appeal this court wrote:

"Defendant had no right to offer testimony until the default had been set aside, and we are of the opinion that, although not in terms set aside, there was an implied vacation of the default."

The record here shows the second motion came on for hearing by agreement between counsel before the same judge who heard the first motion and after hearing the motion, reading the affidavits submitted, hearing arguments of

---

5. Counsel states he is unsure whether they are now effective, but did this to comply with Rules of Practice effective November 15, 1909 and found in the preface of 22 S.D. on page 2. See also Vol. 1, 1919 R.C., page 163. While rules were adopted in 1939 and 1966 (RCP) our attention has not been called to any rule specifically detailing the contents of such motions. We think it apt to indicate that until a specific rule is adopted, practice under RCP 7(b), 54(b) and the intent of the Rules, require sworn statements of the facts by persons having knowledge thereof which would entitle movant to the relief requested, that the facts have been related in full to counsel and he has been advised the defense is meritorious as the former rules required and a copy of the proposed answer.

counsel and based on the files and records, the motion was denied. The record does not show any objection made by plaintiff that leave of court was not obtained, nor does the order state that as the reason for denying the motion; to the contrary, it states the court considered the affidavits—the evidence as in Boshart. This motion is therefore regarded as having been made on his implied leave. Olson v. Advance Rumely Thresher Co., supra.

We need not rest our conclusion on the above reasoning alone. The Rules of Civil Procedure adopted in 1966 make several changes in our former procedure, among them RCP 54(b).[6]

■ The action listed four defendants; on August 8th when judgment was entered against Little Audrey the action was still pending against the other three. It was not until thereafter it was dismissed as to TBL, August 13th; a second judgment was taken against IMCA, August 19th and at a later date Lloyds appeared with the $15,000 deposit October 7th-16th. Neither the Little Audrey nor IMCA judgment contained "an express determination that there is no just reason for delay and * * * an express direction for the entry of judgment." Under RCP 54(b), in the absence of such determination, a judgment adjudicating fewer than all the claims, rights and liabilities of fewer than all the parties is not a final judgment. Such was the decision in Chevrolet Local Union No. 659 v. Reliance In-

---

6. **"Judgment Upon Multiple Claims or Involving Multiple Parties.** When multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

surance Companies, Mich.App., 174 N.W.2d 924, where the court held an appeal did not lie as a matter of right. It is stated by the annotator in 38 A.L.R.2d 377 at 380, that all the authorities agree that absent the two statements required by Rule 54(b) the judgment is not final. The rule further directs that in such event "the order or other form of decision is subject to **revision** at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." (Emphasis supplied.) By this rule the trial court retained jurisdiction to revise the judgment. It is unnecessary for the court to determine how far that authority extends; suffice to say it had jurisdiction over this judgment on application of a defaulted defendant to relieve it of the default.[7] This construction of Rule 54(b) complies with RCP 1, that they "be construed to secure the just, speedy and inexpensive determination of every action."

The order appealed from must be reversed and unless this court grants terms upon such reversal the trial court may not do so. Byrum v. Smith, 50 S.D. 186, 208 N.W. 828. This was a tangled web to unravel and while the appellant's negligence is held legally excusable, it is a business institution and not without some fault for failing to answer, and imposition of terms is to be weighed and balanced in accordance with the facts in each case. The order is reversed and remanded to the trial court with instructions to enter an order permitting appellant to serve and file an answer upon payment of $350 terms to plaintiff; the judgment however to remain as security for plaintiff to abide the result of the action against appellant. See Ackerman v. Burgard, supra.

All the Judges concur.

---

7. To permit plaintiff recovery of two separate judgments against each of two defendants for his one claim of loss of that amount, including $6,000 attorney's fees indicates revision of the judgment in other respects as a basis of defendant's claim. It may have been for that reason the circuit court in its first order granted the right to rehear the question of damages. The second order made no reference to that subject.