NATIONAL SURETY CORP., Respondent v. SHOEMAKER, Appellant

(195 N.W.2d 134)

(File No. 10762.  Opinion filed February 25, 1972)

**Douglas W. Bantz,** Aberdeen, for defendant-appellant.

**Raymond M. Schutz,** of **Siegel, Barnett, Schutz & O'Keefe,** Aberdeen, for plaintiff-respondent.

RENTTO, Associate Judge.*

This is an appeal from an order of the circuit court of Brown County dated June 10, 1969 denying defendant's application to set aside a judgment entered against him by default. He claims that the trial court abused its discretion in denying his motion. While not framed in the language of the rule, or otherwise too clearly stated, it appears from the record that one ground of the motion presented to the court by the defendant was that his failure to answer in time was occasioned by excusable neglect.

On June 4, 1959 in the District Court of Mitchell County, Kansas, plaintiff was awarded a judgment for $65,000 against the defendant. He was then living in Kansas but later moved to Aberdeen, South Dakota, where he was employed as a teacher in the public schools. The record indicates that he made periodic payments on the judgment after it was entered and apparently was doing so while living in South Dakota.

On June 4, 1964 the summons and complaint in this action were served on him at Aberdeen. It is based on the Kansas judgment and prays relief in the full amount awarded in that suit, $65,000, together with interest from the date of its entry. Shortly before this litigation was commenced defendant had secured a college teaching position in Michigan and went there to arrange housing for his family. When he returned to Aberdeen he learned that the sheriff had been at his home so he went to the sheriff's office where he was served with process.

---

* Acting as Judge of the Supreme Court by appointment pursuant to SDCL 16-8-13.

On the day that he was served he contacted plaintiff's South Dakota counsel who resided in Aberdeen and wrote a letter to its Minneapolis office. In it he complained that the bringing of this suit violated an assurance made to him by plaintiff's Kansas City office. He also inquired as to the present balance due so that he could refute the amount asked in the complaint.

On July 2, 1964 he talked with plaintiff's counsel and at his suggestion telephoned the Minneapolis office which he claimed advised him that the action would be dropped. He also claims that plaintiff's counsel verified this when he got in touch with him again on July 6th, that being a Monday and the last day of his answer time. Plaintiff's version is that it did not assure him that the action would be dropped but only that it would be held in abeyance pending his making satisfactory arrangements to pay the Kansas judgment.

Defendant moved to Michigan in August of 1964. Before making the trip he wrote plaintiff's office in Minneapolis on July 20th about stopping there to see them on his way and suggested August 14th as a suitable date. In acknowledging this letter plaintiff's office agreed to the date and indicated they wanted to talk about a substantial increase in payments. Plaintiff's inter-office memo of August 18, 1964 indicates that the meeting was held and devoted largely to a scathing rebuke of the defendant and some discussion about increasing his payments. Apparently he made periodic payments in increased amounts until June 1, 1966. In the memo it is suggested that if he were kept under enough pressure his father would probably come to his financial rescue. After this meeting the Minneapolis office sent its file to its Detroit office.

Plaintiff started an action in Michigan against the defendant on October 20, 1966 on the Kansas award asking $62,935, the balance then due. The complaint made no mention of the suit in South Dakota. On November 10, 1966 he filed an answer to it in which he claimed that there was no balance owing on the Kansas judgment and that it no longer existed. These defenses are based on K.S.A. 60-2403, which provides in effect that if execution is not

sued out within five years from the date of the judgment it shall be dormant, and if not revived within two years after that as provided in K.S.A. 60-2404, it is released and the clerk required to release it and make an entry in the docket reciting that it is barred and released of record. The judgment in issue was so endorsed on October 31, 1966. His answer did not refer to the litigation in South Dakota.

Apparently there was no further activity in connection with the proceeding in South Dakota until plaintiff's Michigan counsel on November 24, 1967, suggested that it have its counsel in this litigation proceed to obtain a default judgment. Defendant had heard nothing concerning it after he moved to Michigan until he received a notice of entry of judgment therein mailed to him by plaintiff's South Dakota counsel on January 23, 1968. It was dated January 22, 1968 and issued on an affidavit of default filed that date. He promptly retained a lawyer in Michigan who in turn engaged the services of his present counsel in South Dakota. Plaintiff's local attorney was advised of such retention on February 12, 1968.

■ The application to vacate the judgment filed October 8, 1968 was heard by the court solely on affidavits and written exhibits on November 7, 1968 and February 19, 1969. In view of this our review of the evidence is unhampered by the rule that a trial judge who has observed the demeanor of witnesses is in a better position to intelligently weigh the evidence than are we. State Automobile Casualty Underwriters v. Ruotsalainen, 81 S.D. 472, 136 N.W.2d 884; Davis v. Interstate Motor Carriers Agency, 85 S.D. 101, 178 N.W.2d 204. The effect of this is that we determine the facts on the written evidence in the record. Credit Management Service, Inc. v. Wendbourne, 76 S.D. 80, 72 N.W.2d 926. Consequently, complaints as to findings made or refused lose their traditional significance. Our inquiry is whether the court erred in denying the motion to vacate.

As indicated plaintiff denied that it told defendant the South Dakota action would be stopped. When he wrote it July 20th about discussing the matter on August 14th, he mentioned his

appreciation of its quick action on his request to have it stopped. Its July 24th letter of acknowledgment agreeing to a meeting on the suggested date made no mention of his reference to its promise to stop the action. On July 8th plaintiff's Aberdeen counsel wrote the Minneapolis office acknowledging a telephone conversation had on July 6th instructing him "not to proceed with obtaining the judgment" against the defendant. In it he also stated that "Since this undoubtedly terminates the matter as far as we are concerned, we are closing our file and enclose to you our bill for services". Counsel referred to it as a closed file when plaintiff next inquired of him concerning it on October 23, 1967.

An inter-office memo of the plaintiff dated July 24, 1964, indicates that its Minneapolis Claims Division, after learning that defendant was moving to Michigan to accept employment as a college instructor, felt that in view of such move it was not the opportune time to proceed with the South Dakota action because "we would then again contend with the same pattern of transferring judgment from Dakota to the State of Michigan." An inter-office memo of its Kansas City office of October 31, 1967 reveals that the claims division felt that the further expense of having the judgment transferred to South Dakota was not warranted and that plaintiff wait a reasonable time and sue on the judgment in Michigan.

In their affidavits plaintiff's counsel and three employees of its Minneapolis Claims Division denied that defendant had been told or assured that the action would be dropped. The version of the three employees was that it would be held in abeyance pending his efforts to make satisfactory arrangements for its payment. In this connection it is proper to observe that while defendant left South Dakota in August of 1964 and made no payments after June 1, 1966, the application for a judgment by default in this litigation was not made until January 22, 1968. The totality of the circumstances here present persuades us to accept defendant's version of the incident.

■ The procedure and grounds for relieving a party from a judgment, including those entered on default, are set forth in SD-CL 15-6-60(b). This was originally adopted as RCP 60(b) effective

July 1, 1966. It gives the trial courts a wide discretion to relieve from judgments entered on default. Davis v. Interstate Motor Carriers Agency, 85 S.D. 101, 178 N.W.2d 204. It is a copy of Rule 60(b) of the Federal Rules, without its last sentence. The portion here pertinent provides:

> "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) Mistake, inadvertence, surprise, or excusable neglect;"

In the federal courts this rule is liberally construed and any doubt resolved in favor of an application to set aside a judgment in order that the case may be tried upon the merits. See note 3 of the annotation following Federal Rule 60, U.S.C.A. 28, and Federal Practice & Procedure — Barron & Holtzoff (Wright) § 1323.

██ Early in our statehood we adopted a similar policy. In Griswold Linseed Oil Co. v. Lee, 1 S.D. 531, 47 N.W. 955, we said that the discretion conferred on the courts to relieve parties from judgments taken against them by mistakes:

> "should be exercised by them in the same liberal spirit in which the section was designed, in furtherance of justice and in order that cases may be tried and disposed of upon their merits".

See also Searles v. Christensen, 5 S.D. 650, 60 N.W. 29; Fisk v. Hicks, 29 S.D. 399, 137 N.W. 424; Ackerman v. Burgard, 79 S.D. 119, 109 N.W.2d 10, and Uhlich v. Hilton Mobile Homes, 80 S.D. 478, 126 N.W.2d 813. This spirit is also true of our present rule. Davis v. Interstate Motor Carriers Agency, 85 S.D. 101, 178 N.W. 2d 204. Default judgments are not favored in the courts since their effect is to prevent a trial on the merits.

■ ■ As recognized in Gunvordahl v. Knight, 73 S.D. 638, 47 N.W.2d 561, the term excusable neglect has no fixed meaning. When it is urged the test is whether the defendant's conduct in failing to answer might be the act of a reasonably prudent person under the same circumstances. Bateman v. McDonald, 94 Ariz. 327, 385 P.2d 208; Tammen v. County of San Diego, Cal., 54 Cal. Rptr. 313, 419 P.2d 433. We believe defendant acted reasonably in relying on the assurances given him by the employees of the plaintiff's claims division that the suit would not be prosecuted. Accordingly, we hold his neglect was excusable and that it was the cause of his default.

■ As a general rule a default judgment will not be set aside unless the defendant makes a showing of a meritorious defense. 35B C.J,S. Federal Civil Procedure § 1131. Plaintiff suggests that the claim of the defendant based on the Kansas statute is not of that dignity. We think it is. The applicant satisfies this requirement if he makes only a prima facie showing. Griswold Linseed Oil Co. v. Lee, 1 S.D. 531, 47 N.W. 955; Rooks v. American Brass Co., 6 Cir., 263 F.2d 166. The rule does not intend that there should be two trials on the merits. Moreover, a motion to vacate is not a proper procedure for such determination. Consequently, we feel that the trial court abused its discretion in denying the motion to vacate.

■ ■ Defendant also complained that he was entitled to notice of plaintiff's application for a judgment by default. Failure to give the notice when it is required is grounds for setting the judgment aside. Under our prior practice such notice had to be given to a party if it had given "notice of appearance" in the action. SDC 1960 Supp. 33.1707. Our present rule requires that the notice be given to a party if it "has appeared in the action". SDCL 15-6-55(b) (1). This part of our rule is taken from Federal Rule 55(b) (2). While we are not bound by the construction given by the federal courts to language taken from their rules and incorporated in ours, we do accept it as a guide in determining the meaning of that which we have adopted. In Re Estate of Hobelsberger, 85 S.D. 282, 181 N.W.2d 455.

■ ■ Not every exchange between the parties constitutes an appearance. Rutland Transit Co. v. Chicago Tunnel Terminal Co., 7 Cir., 233 F.2d 655, holds that a party has not appeared in an action within the meaning of the rule by merely requesting delays in entry of a default judgment. Recognizing the policy underlying the modernization of federal procedures as being to abandon or relax restrictive rules which prevent the hearing of cases on their merits the United States Court of Appeals, District of Columbia Circuit, in H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 139 U.S.App.D.C. 256, 432 F.2d 689, wrote as follows about the rule under consideration:

> "Given this approach, the default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection. Furthermore, the possibility of a default is a deterrent to those parties who choose delay as part of their litigative strategy. The notice requirement contained in Rule 55(b) (2) is, however, a device intended to protect those parties who, although delaying in a formal sense by failing to file pleadings within the twenty-day period, have otherwise indicated to the moving party a clear purpose to defend the suit."

We feel this states the purpose of our rule.

Strictly speaking the defendant never indicated a purpose to defend the South Dakota suit. No doubt the reason for this was that, as indicated, he was lead to believe it would not be prosecuted any further. However, the suit in Michigan and this action, except for the time of commencement, are, for all practical purposes, one. See Press v. Forest Laboratories, Inc., D.C., 45 F.R.D. 354. The causes of action asserted in them are the same.

. When so viewed the defendant did indicate to the plaintiff a clear purpose to defend against the cause of action alleged in the South Dakota proceeding when he served his answer to the Michigan suit. This was more than fourteen months before plaintiff applied for its default judgment. In these circumstances we believe the defendant had appeared in this action and was entitled to the prescribed notice. To hold otherwise seems to us unfair and a circumvention of the intent of the rule.

For the reasons stated herein, the order of the trial court is reversed.

HANSON, P. J., and BIEGELMEIER and WINANS, JJ., concur.

RENTTO, Associate Judge, sitting for WOLLMAN, J., disqualified.

DOYLE, J., not participating.