CITY OF LEMMON, a Municipal Corporation, Plaintiff,

v.

UNITED STATES FIDELITY & GUAR- ANTY COMPANY and Esther D. Wells, Individually and as Personal Represent- ative of the Estate of Duane Wells, De- ceased, Defendants and Appellants,

and

Schmucker, Paul, Nohr & Associates and Soil Exploration Company, Defendants and Appellees,

and

Orville Willett d/b/a B and W Pools and B and W Pools, Inc.; Bank of Lemmon; Patrick LaSalle d/b/a LaSalle Construc- tion Company; Timber Weld Manufac- turing; Christ P. Hoff d/b/a Hoff Readymix; Fullerton Lumber Company; Nick Krebs and Son; Globe, Inc.; Joe Messmer d/b/a Joe's Plumbing; Julian Wolff d/b/a Wolff's Heating and Plumbing; Stock's Electric, Inc.; and other unknown John Doe Lien Claim- ants, Defendants.

No. 12754.

Supreme Court of South Dakota.

Argued March 19, 1980.

Decided June 11, 1980.

James P. Hurley of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendants and appellants United States Fidelity & Guaranty Company and Esther D. Wells, Individually and as Personal Representative of the Estate of Duane Wells, Deceased; Thomas E. Simmons of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, on brief.

Marvin D. Truhe of Lynn, Jackson, Shultz & Lebrun, Rapid City, for defendants and appellees Schmucker, Paul, Nohr & Associates; Gregory A. Eiseland of Lynn, Jackson, Shultz & Lebrun, Rapid City, on brief.

Robert F. LaFleur, Rapid City, for defendant and appellee Soil Exploration Company.

DUNN, Justice.

United States Fidelity and Guaranty (USFG), defendant, appeals from a judgment dismissing its supplemental cross claim for failure to state a claim upon which relief can be granted. Defendant-appellant Esther Wells, individually and as personal representative of the estate of Duane Wells (Wells), appeals from the denial of her motion for relief from default and entry of default judgment against her. Mrs. Wells also appeals from the dismissal of the supplemental cross claim, mentioned above, in which she was joined. We affirm in part and reverse in part.

The City of Lemmon, South Dakota (city), as plaintiff brought this lawsuit against defendants, Wells, USFG, Schmucker, Paul, Nohr & Associates (SPN), Soil Exploration Company (SEC), and various subcontractors and lien claimants. All parties were involved in the city's project of constructing a new municipal swimming pool, wading pool and bathhouse at Lemmon, South Dakota.

The city, as owner of the construction project, entered into a bonded public construction contract with Wells as general contractor. Wells agreed to construct the project in accordance with project plans and specifications prepared by SPN, the city's project architect and engineer, and under the supervision and subject to the approval of SPN. Pursuant to its contract with the city to supply engineering services for the project, SPN employed SEC to analyze soil conditions existing at the project site. SEC was to evaluate the suitability of the site for the project and make engineering recommendations concerning proper foundation, structure design, and proper construction procedures. In accordance with South Dakota law, Wells obtained a construction surety bond from USFG in the amount of the construction contract in the sum of

$155,450.00. This bond was conditioned upon the faithful performance by Wells of the construction contract under the terms of SPN's plans and specifications and under the supervision, inspection, and approval of SPN. It was further conditioned upon payment by Wells for materials and labor incorporated into the project by the lien claimants.

Construction of the new swimming pool complex began in the spring of 1974 and, under the terms of the construction contract, was to be completed on July 15, 1974. Construction was not completed on July 15, 1974, but Wells was given an additional twelve months to complete the project on or before July 15, 1975. In the spring of 1975, however, the bathhouse portion of the project showed definite signs of differential movement causing serious cracking of concrete walls, floors and slabs.

The project was not completed and litigation was filed to determine the liability of each of the parties for failure of the project. The city's lawsuit against USFG, as finally amended, consisted of four counts. One count was based upon the performance bond, and the other three counts alleged direct rather than vicarious liability against USFG, including fraud, deceit, misrepresentation, suppression of facts, and breach of a covenant of good faith. The latter three counts were for compensatory damages in the amount of $500,000 and punitive damages in the amount of $2,000,000. The city's action against SPN was for negligent breach of its contract with the city and negligent misrepresentation regarding its contract duties. Wells and SEC were sued for negligence, and a claim of indemnity was brought against the various lien claimants.

Upon completion of discovery, USFG deposited with the trial court the sum of $194,129.80. This sum represented the full amount of the performance bond plus interest from the date that Wells, USFG's principal, ceased work on the project.

Immediately prior to the date set for trial, USFG settled the claim of the city by payment in the amount of $294,120.80, and settled and fully satisfied the cross claims and demands of the lien claimants in the amount of $21,327.75. The lien claimants were subcontractors, laborers and materialmen on the project. In exchange for these payments from USFG totaling $315,448.55, the city and the lien claimants assigned to USFG all of their claims and rights of action against the remaining principal defendants, SPN and SEC, and released all parties to this action, including SPN and SEC. Following various default orders of the trial court and USFG's settlement payment to the city, USFG filed a supplemental cross claim to reflect the changes that had occurred in the litigation and the issues remaining to be litigated. Therefore, on the date that the trial court entered the judgments which are the subject of this appeal, essentially all that remained of this litigation was the amended cross claim of USFG against SPN and SEC, the amended cross claims of SPN and SEC against USFG and Wells, and the supplemental cross claim of USFG in which Wells was joined against SPN and SEC, which was filed after USFG's settlement payment to the city.

SPN and SEC filed various motions before the trial court, including a motion to dismiss the supplemental cross claim of USFG and Wells. The trial court entered its *memorandum decision dated December 28, 1978,* holding that SDCL 56–2–14, 15 and 16 provide that the surety, USFG, may only look to its principal, Wells, for recovery in full or in part of USFG's settlement payment to the city. The trial court stated that USFG, as a surety, cannot recover any amount from other parties such as SPN or SEC even though such third parties may have caused or contributed to the loss or unjustly benefited from USFG's settlement payment. On March 12, 1979, the trial court entered its judgment dismissing the supplemental cross claim of USFG and Wells against SPN and SEC for failure to state a claim upon which relief can be granted. It should be noted here that about one month before the supplemental cross claim was dismissed, Mrs. Wells signed a stipulated judgment against Wells

and in favor of USFG in the amount of $315,443.55.

The issue of the propriety of the default judgment entered against Wells involves a separate set of facts. Duane Wells, general contractor on the Lemmon project, was killed in an airplane crash prior to the commencement of the instant litigation. The first action to determine the rights of the parties to this project, however, was entitled *B and W Pools, Inc. and Bank of Lemmon v. Duane Wells, United States Fidelity and Guaranty Co. and City of Lemmon,* and was filed prior to the death of Duane Wells. Wells hired an attorney and filed an answer and counterclaim. The *B and W* lawsuit and the instant lawsuit were consolidated by order of the trial court on March 29, 1978. When the present lawsuit was brought by the City of Lemmon, Mrs. Wells was without funds to continue to employ an attorney to pursue this litigation. Mrs. Wells therefore did not file an answer or other pleadings in the city's suit. She was, however, served with all pleadings and documents of record by all counsel throughout this litigation.

Mrs. Wells stated in her affidavit in support of her motion for relief from default that she recognized that USFG had pleaded the same claims that she would have pleaded and pursued in discovery had she been financially able to do so. When USFG settled the claims of the city and the lien claimants, Mrs. Wells was joined on October 4, 1978, in the supplemental cross claim against SPN and SEC. On October 20, 1978, SPN and SEC filed their motion for default judgment against Mrs. Wells, but failed to serve her with a notice of intention to take default judgment. Mrs. Wells then filed her motion for relief from default. The trial court recognized that Mrs. Wells' motion was for relief from a *position* of default because she was joined in the supplemental cross claim before SPN and SEC filed their motion for default judgment, and no default order had been entered against her in the city's litigation. The trial court, however, denied Mrs. Wells' motion and entered a default order and final judgment of dismissal barring and forever foreclosing Mrs. Wells from asserting any claim arising out of the subject matter of this action.

■ We address the issue of default first. We find the trial court erred in not permitting Mrs. Wells to pursue the claims set forth in the supplemental cross claim against SPN and SEC. We agree that SDCL 15–6–55(c) and 15–6–60(b) support Mrs. Wells' contention that the default judgment should be set aside. SDCL 15–6–55(c) states: [1]

For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with § 15–6–60(b).

SDCL 15–6–60(b) states in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) Mistake, inadvertence, surprise, or excusable neglect;

\* \* \* \* \* \*

(6) Any other reason justifying relief from the operation of the judgment.

---

1. The pocket supplement for Title 15 of SDCL states that SDCL 15–6–55(c) has been superseded by Supreme Court Rule 76–3. Section 18 of Supreme Court Rule 76–3 merely states that SDCL 15–6–55(c) is "superseded," without stating the manner or extent of supersession. The remainder of Rule 76–3 sheds no light upon the intended supersession. It seems clear, however, that this superseding effect was included due to our opinion in *Gilliland v. Courtesy Motors, Inc.*, 89 S.D. 273, 232 N.W.2d 828 (1975), in which we briefly examined an inconsistency between SDCL 15–6–55(c) and FRCP 55(a), 55(b), and 55(c). The inconsistency occurred in that the federal rules allowed the clerk of courts to enter a default or a default judgment under certain circumstances, while South Dakota maintained the practice of allowing only the court, not the clerk, to enter a default judgment. We are confident this is what the supersession refers to, and we are likewise confident that the thrust of SDCL 15–6–55(c) remains fully in effect.

This court has consistently construed these statutes liberally in the belief that disputes should be tried and disposed of upon their merits. *Kuehn & Maierhauser v. First Nat. Bank in Sioux Falls,* 90 S.D. 96, 238 N.W.2d 490 (1976); *Davis v. Interstate Motor Carriers Agency,* 85 S.D. 101, 178 N.W.2d 204 (1970); *Uhlich v. Hilton Mobile Homes,* 80 S.D. 478, 126 N.W.2d 813 (1964); *Gunvordahl v. Knight,* 73 S.D. 638, 47 N.W.2d 561 (1951). It is important to note that Mrs. Wells had been joined in the supplemental cross claim before a motion for default had been filed against her. This pleading included all of the issues that are relevant to the resolution of this complicated dispute. The issues involving the alleged negligence of SPN and SEC in performing their contract obligations have been present since the inception of this lawsuit and have been extensively examined by SPN and SEC during discovery. SPN and SEC were prepared to go to trial on these very issues prior to USFG's settlement payment. We see no prejudice to SPN and SEC in now submitting these same issues for trial by jury.

We have stated that the term "excusable neglect," as employed in SDCL 15–6–60(b)(1), is difficult to accurately define. *Kuehn,* supra at 494. Mrs. Wells stated in her affidavit in support of her motion for relief from default that she realized that USFG had pleaded the same claims that she would have pleaded. She further stated she was financially unable to plead these claims on her own behalf. When the trial court barred USFG's claims against SPN and SEC, Mrs. Wells filed her motion for relief from default in order to pursue these claims directly. In fact, Mrs. Wells filed her motion for relief from default when she was merely in a *position* of default, and before the actual entry of the default judgment. When viewed with an eye toward liberal construction of 15–6–55(c) and 15–6–60(b)(1), we find this neglect to be excusable. The death of a husband and resulting lack of funds is similar to situations that have been recognized as misfortune sufficient to relieving a default judgment. 46 Am.Jur.2d § 716 and § 718, pp. 869–873.

In addition to the above, we find that the answer and counterclaim timely filed by Wells before his death in the *B and W* lawsuit was sufficient to prevent entry of default judgment. It is important that the *B and W* lawsuit and the instant lawsuit were consolidated by court order. Although no case law exists which is directly on point, we find the analysis in *National Surety Corporation v. Shoemaker,* 86 S.D. 302, 195 N.W.2d 134 (1972), very persuasive. In *Shoemaker,* the plaintiff instituted an action in South Dakota to recover on a Kansas judgment against defendant (who had subsequently moved to South Dakota). Defendant did not file a pleading in the South Dakota action. Defendant then moved to Michigan, and plaintiff commenced another action there to recover on the same Kansas judgment. Defendant filed an answer in the Michigan action. Fourteen months later, defendant was notified that a default judgment had been entered against him in the South Dakota proceeding. We held that the lawsuits in Michigan and South Dakota were, except for the time of commencement, one and the same because the causes of action and the issues involved were identical. We found that defendant had acted adequately to indicate to the moving party a clear purpose to defend the lawsuit, especially in light of defendant's contention that plaintiff had previously stated that the South Dakota lawsuit would not be prosecuted any further. Hence, we vacated the default judgment because defendant had not received notice of plaintiff's application for default judgment as required by SDCL 15–6–55(b)(1).

We find the *Shoemaker* case persuasive, especially because the defendant in *Shoemaker* apparently had taken less decisive action than Wells has in the instant case. The key point in the *Shoemaker* case, that a party must indicate to the moving party a clear purpose to defend the suit, is often used by other courts. *See R. F. v. D. G. W.,* 192 Colo. 528, 560 P.2d 837 (1977); *Roland v. W & L Motor Lines, Inc.,* 32 N.C.App. 288, 231 S.E.2d 685 (1977); *Wilderson v.*

*Webb*, 54 Misc.2d 719, 283 N.Y.S.2d 378 (1967); *Daniels v. Hall's Motor Transit Company*, 205 S.E.2d 412 (W.Va.1974); *United Accounts, Incorporated v. Lantz*, 145 N.W.2d 488 (N.D.1966). Here, as in *Shoemaker*, the defendant had answered in a lawsuit which was, for all practical purposes, one and the same with the case now before us. Wells has "made an appearance" and demonstrated a clear purpose to defend the suit. It follows that we must vacate the default judgment because Mrs. Wells did not receive the notice prescribed in SDCL 15–6–55(b)(1).

The next question that presents itself is whether Mrs. Wells is in a position to sue SPN and SEC pursuant to our joint tort-feasor statute. SDCL 15–8–11 states in pertinent part:

> [T]he term "joint tort-feasors" means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

We are confident Mrs. Wells fits this definition. There are two or more persons charged with contributing, by their negligence, to the one injury suffered by the city, which is the failure of the parties to complete the pool facility.

SDCL 15–8–13 states: "A joint tort-feasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his prorata share thereof." The key portion of this statute, for purposes of this dispute, is the discharge of the common liability. There is no question that USFG is currently "out-of-pocket" by having made the settlement payment in total. There is likewise no question that Mrs. Wells has signed a legally binding stipulated judgment, and thereby has become the party who will bear the ultimate burden if no negligence is found on the part of SEC, SPN, or USFG. In the final sense, then, Mrs. Wells has clearly discharged the common liability. There is a dearth of case law on this point. If we were to hold that the stipulated judgment was insufficient to satisfy the "payment" aspect of SDCL 15–8–13, we would render the legally binding stipulation a nullity, and would do violence to the spirit of the statute. The spirit of our joint tort-feasor provisions is to allow a fact finder to place the blame in proportion upon all those who contributed to the injury. We hold, therefore, that Mrs. Wells has satisfied our joint tort-feasor requirement and, upon remand, may proceed accordingly.

The issue of whether USFG may properly bring suit has two sub-issues, i. e., (1) whether USFG has a direct claim of professional negligence against SPN and SEC, and (2) whether USFG may be subrogated to the claims of Mrs. Wells. With regard to the first of these sub-issues, we find USFG has no direct claim.

SDCL 56–2–14 states in pertinent part:

> If a surety satisfies the principal obligation . . . whether with or without legal proceedings, the principal is bound to reimburse what he has disbursed . . . but the surety has no claim for reimbursement against other persons, though they may have been benefited by his act, except as prescribed by § 56–2–15.

We believe this statute means precisely what it says. USFG, having paid the full amount of its performance bond plus interest, may look to Wells, the principal, for reimbursement, but no further. It is incumbent upon a surety to acquire sufficient security and collateral from its principal, or be convinced of its principal's continued solvency, so that if payment on the bond is necessary, the surety may recoup its expenditure from the principal. USFG could have had its day in court by allowing the case to go to trial on the scheduled date. We must hold USFG accountable for knowledge of the provisions of SDCL 56–2–14. Hence, USFG elected its remedy by making the settlement payment, and may now proceed only against its principal Wells.

We hold in this manner despite the two California cases cited by USFG that appar-

ently reach the opposite conclusion. *Commercial Standard Insurance Co. v. Bank of America*, 57 Cal.App.3d 241, 129 Cal.Rptr. 91 (1976); *Community Nat. Bank v. Fidelity & Deposit Co.*, 563 F.2d 1319 (9th Cir. 1977). It must be noted that in neither of these cases was the surety charged with intentional tortious acts as is the case here. The *Community National* case, a federal appeals court decision, cited *Commercial Standard* for support. We do not feel obliged to accept the *Commercial Standard* rationale, even though we have in the past stated we would treat with deference decisions of the California Supreme Court where our statutory provisions are similar, *Munderloh v. Seastrom*, 270 N.W.2d 377 (S.D.1978), because the *Commercial Standard* decision is from a lower California court.

It is clear to us that by holding that USFG could sue directly against SPN and SEC we would be rendering SDCL 56–2–14 a complete nullity. It is of the utmost importance to note that this statute prohibits a suit by a surety against those other than the principal *despite any benefit that may accrue to the third parties*. It thus seems evident that the statute speaks directly and unequivocally to this type of situation.

We do not accept the rationale of the *Community National* and *Commercial Standard* cases, supra, when they state that a California statute identical to SDCL 56–2–14 was not intended to totally abrogate the common law. SDCL 1–1–24 states in pertinent part: "In this state the rules of common law . . . are in force, except where they conflict with the will of the sovereign power, expressed in the manner stated in § 1–1–23." SDCL 1–1–23 states that the will of the sovereign power is expressed by the legislature, among others. Additionally, SDCL 2–14–12 states:

> The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to the code of laws enacted by § 2–16–13. Such code establishes the law of this state respecting the subjects to which it relates

and its provisions and all proceedings under it are to be liberally construed with a view to effect its objects and to promote justice.

Taken as a whole, there is no doubt that our statutes that deal so directly and unequivocally with the case at bar must prevail and must not be compromised by resorting to common law.

USFG's statement is correct that SDCL 56–2–14 became law in 1877 whereas our joint tort-feasor statutes became law in 1945. There is, however, no indication that our legislature wished to render SDCL 56–2–14 void. If so, the latter statute could have been repealed. It is by far the better reasoned approach to accept a statute as narrow as SDCL 56–2–14 as a limited exception to the broad sweep of our joint tort-feasor statutes, rather than render SDCL 56–2–14 a nullity.

█ Likewise, SDCL 56–2–14 precludes USFG as a surety from being subrogated to any of Mrs. Wells' rights against SPN and SEC. The plain meaning of SDCL 56–2–14 is that USFG may not be involved in litigation against SPN and SEC, regardless of the legal theory upon which it may choose to bring suit. We will not use the equitable theory of subrogation to defeat this statute.

USFG cites SDCL 56–2–15 and SDCL 56–2–16 as authority for its position that it should be able to bring suit. SDCL 56–2–15 reads:

> A surety, upon satisfying the obligations of the principal, is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what he has expended, and also to require all his cosureties to contribute thereto without regard to the order of time in which they became such.

SDCL 56–2–16 reads:

> A surety is entitled to the benefit of every security for the performance of the principal obligation held by the creditor or by a cosurety at the time of entering the contract of suretyship or acquired by him afterwards, whether the surety was aware of the security or not.

**440**

Neither of these statutes apply to the instant case. SDCL 56–2–15 speaks of the surety enforcing the creditor's remedy against the surety's principal. USFG is not concerned in this appeal with any action against its principal Mrs. Wells. Similarly, SDCL 56–2–16 is not pertinent because this appeal does not involve any type of security deposit between the parties.

The lower court judgment is affirmed to the extent that it prevents USFG from bringing suit against SPN and SEC and bars USFG from asserting a theory of subrogation. The default judgment against Mrs. Wells is hereby vacated, and that portion of the judgment dismissing Mrs. Wells' supplemental cross claim is also vacated.

All the Justices concur.