In the Matter of the ESTATE of SEDLACEK, Appellant
v. MOUNT MARTY HOSPITAL ASSOCIATION, et al.,
Respondents

(218 N.W.2d 875)

(File No. 11089. Opinion filed May 28, 1974)

Order for rehearing denied July 2, 1974.

Brady, Kabeiseman, Light & Reade, John R. Kabeiseman and Gerald L. Reade, Yankton, for appellant.

May, Johnson & Burke, Harold C. Doyle, Sioux Falls, for respondents.

EVANS, Circuit Judge.

This is an appeal from a judgment of the circuit court affirming an order of the district county court which denied a

petition to vacate and set aside an order of the county court[1] authorizing compromise of a wrongful death claim, decree of distribution and final discharge of special administrator.

Appellant's first contention is that there was fraud, deceit and misrepresentations used or perpetrated by Don Bierle, the attorney for respondents, in negotiating a compromise settlement with Stanley Sedlacek and upon the court of Yankton County in connection with such special administration proceedings.

On April 8, 1968, Patricia B. Sedlacek died at Sacred Heart Hospital in Yankton, South Dakota after she had been administered an overdose of sodium chloride solution by a nurse in excess of doctor's orders. She was 37 years of age and was survived by her husband, Stanley, and five minor children. Sacred Heart Hospital had liability insurance coverage with Agricultural Insurance Company. About two weeks after decedent's death respondent's attorney called Stanley Sedlacek and asked him to stop at his office to discuss the matter with him. Stanley Sedlacek was a carpenter and lacked six hours of having a degree in business administration. Mr. Sedlacek testified he had known Mr. Bierle well approximately 25 years and they were on a first-name basis, that they discussed the hospitalization of his wife and that the hospital wanted to help me out and all this to pay my bills and so forth; that he told Mr. Bierle he had quite a few bills and Mr. Bierle asked him to get them together and find out how much he owed; that Mr. Bierle did not tell him who he represented but he assumed he was the attorney for the hospital; that he saw Mr. Bierle the following Saturday with his compiled bills; that he asked Mr. Bierle about a $1,000 life insurance policy that he had for his wife and Mr. Bierle offered to and did write a letter to the insurance company to collect it; that Sedlacek signed it and the secretary mailed it. Mr. Sedlacek further testified that at the last meeting Mr. Bierle offered to assist him in making a new will without any request on his part, however he did not have it done.

1. All the special administration proceedings were entitled "In County Court" although the name of the Court had been changed on February 15, 1968 to "District County Court." Session Laws 1968, Ch. 143, § 1.

Mr. Sedlacek further testified there was further discussion at a third meeting at Bierle's office during the following week. Mr. Bierle presented him with some legal instruments but none were executed then. There was no discussion relative to the dollar amount. At a fourth meeting Mr. Bierle had a check made out to him for $15,000 and some other instruments prepared. He further testified that up to this time Mr. Bierle had never advised him to seek independent counsel or that he had a claim against Sacred Heart Hospital or that his wife died as a result of negligence on the part of the hospital.

The record further shows that on Saturday, May 11, 1968, after discussion and negotiations on five previous occasions all at Bierle's office, Mr. Sedlacek signed a petition for letters of administration, a petition asking authorization to compromise for $15,000 all claims for wrongful death and any possible survival action, a bond and oath. An order with letters of special administration appointing Mr. Sedlacek special administrator and an order authorizing compromise as prayed for in the petition were signed by the county judge on May 11, 1968 and filed and attested by the clerk on May 13, 1968. Mr. Sedlacek on May 11, 1968, after the county judge signed the order authorizing compromise, signed two releases, one as special administrator and one in his individual capacity. A Decree of Distribution was signed and filed May 13, 1968 distributing $10,000 to Mr. Sedlacek and $1,000 to each of his five children. All the petitions and other papers were prepared by Mr. Bierle and Mr. Sedlacek did not have other counsel to represent him.

On May 21, 1968 Mr. Bierle completed and filed the guardianship petition, order and bond and had checks made out to distribute the funds as provided by the decree.

On March 2, 1970 a surviving brother of the decedent was appointed as general administrator of the estate of Patricia B. Sedlacek,[2] and that same day he filed a petition in District

---

2. Stanley Sedlacek declined to act as administrator because he believed he may have prejudiced the cause of action and because he may have been placed in a conflict of interest with the rights of the minor children.

County Court to vacate and set aside (1) order authorizing compromise, (2) decree of distribution and (3) final discharge of special administrator.[3]

A hearing was held in District County Court in March 1970 and the court entered an order denying the petition to vacate and set aside. Petitioner, appellant herein, appealed to the Circuit Court which entered judgment affirming the District County Court order denying the petition to vacate and set aside.

■ The Circuit Court appeal was by stipulation heard de novo and solely on the record of the evidence and testimony submitted to the District County Court. No witnesses appeared before the Circuit Court. In view of this our review of the evidence is unhampered by the rule that a trial judge who has observed the demeanor of the witnesses is in a better position to intelligently weigh the evidence than are we and we determine the facts on the written evidence in the record as though it were presented here in the first instance. National Surety Corporation v. Shoemaker, 86 S.D. 302, 195 N.W.2d 134; State Automobile Casualty Underwriters v. Ruotsalainen, 81 S.D. 472, 136 N.W.2d 884; Davis v. Interstate Motor Carriers Agency, 85 S.D. 101, 178 N.W.2d 204. Consequently, complaints as to findings made or refused lose their traditional significance. Our only inquiry is whether the Court erred in denying the petition to vacate and set aside.

The petition to vacate and set aside the proceedings of the County Court must be decided pursuant to the provisions of SDCL 15-6-60(b). The pertinent provisions of that section insofar as this case is concerned are as follows:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

* * * * * *

---

3.  The purpose of petitioner seeking to vacate and set aside the compromise is to permit a suit for damages in U. S. District Court.

(3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) The judgment is void;

\* \* \* \* \* \*

(6) Any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken. \* \* \* Section 15-6-60 does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided by statute or to set aside a judgment for fraud upon the court."

Prior to the adoption of this rule in 1966 this Court had previously held that fraud as a ground for vacating a judgment must be what is known as extrinsic fraud. Alberts v. Brubaker, 72 S.D. 220, 31 N.W.2d 769. SDCL 15-6-60(b)(3) abolishes such distinction. The appellant herein alleges both extrinsic and intrinsic fraud, that is fraud in the means whereby the releases and the order authorizing compromise were procured and fraud in the cause of action or matter put in issue and presented for adjudication.

The burden of proving such fraud, deceit and misrepresentation is, of course, upon the appellant and fraud and deceit is not to be presumed but must ordinarily be proved by clear and convincing evidence. M. E. Smith and Company v. Kimble, 38 S.D. 511, 162 N.W. 162; Erck v. Bachand, 69 S.D. 330, 10 N.W.2d 518. The measure of proof required by this designation falls somewhere between the rule in ordinary civil cases and the requirement of our criminal procedure, that is, it must be more than a mere preponderance but not beyond a reasonable doubt. Davis v. Kressly, 78 S.D. 637, 107 N.W.2d 5. The appellant herein has not met such burden of proof. Although

we consider the totality of the circumstances in arriving at this decision we will discuss the many individual items which it is claimed constituted fraud.

Appellant claims that Stanley Sedlacek was not informed by Mr. Bierle and that he did not know that his wife died as a result of negligence of Sacred Heart Hospital until he had signed all the legal papers and was never advised that he had a claim against Sacred Heart Hospital. This allegation of fraud is even contrary to Mr. Sedlacek's testimony. The record shows the following questions and answers on cross-examination:

"Q And didn't he also tell you that the hospital felt some responsibility in your wife's death?

A I don't know exactly how he said that, but I mean he related something like that, yes.

Q Anyway, you got the idea that there was some—

A He wanted to assist me in any way they could.

Q But at that time he let you know, didn't he, that the hospital felt somewhat responsible in her death?

A Yes, I guess you could say that, yes.

Q Yes. And this was the reason why the hospital was interested in making some sort of adjustment with you, isn't that correct?

A That's what he said, yes."

Sedlacek testified he never asked Mr. Bierle why or how his wife died. Sedlacek further testified that he had a conversation with his wife's doctor on May 11, 1968, prior to his conference with Mr. Bierle at which the papers were signed, in which conversation with the doctor he was informed that there was an error in the transcription of the doctor's orders and that was the cause of his wife's death and that there was fault insofar as the hospital was concerned. It clearly appears that Mr. Sedlacek knew of the hospital's negligence even if Mr. Bierle did not tell him and there could be no prejudice to Sedlacek. In addition Mr.

Bierle testified that he told Mr. Sedlacek that the hospital felt responsible for the death of his wife because of an overdose of sodium chloride solution which was administered to her because the nurse had made an error and Mr. Sedlacek replied "yes, I know. And I feel that the hospital is responsible too." Sedlacek's testimony further shows that immediately after signing the legal papers on May 11, 1968, and before any were presented to the Court for approval that he asked Mr. Bierle what happened and was told.

Appellant further claims fraud in that Mr. Sedlacek was not advised that Mr. Bierle represented the Sacred Heart Hospital. Again Sedlacek's own admission said he knew from general knowledge that Mr. Bierle represented the Sacred Heart Hospital. The transcript of cross-examination of Sedlacek shows the following:

"Q You were aware of the fact that he was representing Sacred Heart Hospital?

A He was the attorney for them, yes, I knew that.

Q You knew that?

A Yes, I did."

The transcript further shows:

"Q You again knew that Mr. Bierle was representing Sacred Heart Hospital didn't you?

A Yes."

Further, Mr. Bierle testified that he advised Mr. Sedlacek that he represented Sacred Heart Hospital.

Appellant further claims fraud in that Mr. Sedlacek was not advised by Mr. Bierle that he represented the Agricultural Insurance Company. There is nothing in the record that would indicate that Mr. Bierle advised Mr. Sedlacek that he represented the Agricultural Insurance Company. However, the $15,000 check signed by Mr. Sedlacek clearly indicates that the payor was the Agricultural Insurance Company. In any event there is no

showing how the lack of such knowledge by Mr. Sedlacek could in any way or manner have influenced the negotiated settlement of his wife's death.

The appellant further claims fraud in that Mr. Sedlacek was never advised by Mr. Bierle that he should be represented by other independent counsel. It should first be pointed out that there is no evidence whatsoever that Mr. Bierle induced Mr. Sedlacek not to obtain other counsel. In view of the six different discussions and negotiations at Bierle's office and some phone calls between Bierle and Sedlacek it would appear that it was Mr. Sedlacek's own choice that he did not want other counsel to represent him. In addition Mr. Bierle testified that Mr. Sedlacek stated he did not feel he should have to pay for the drawing of the necessary legal papers or the bond premium and that he advised Sedlacek that if he wanted his own personal attorney that was his own personal decision for him to make. As far as any expenses in preparation of the papers, the hospital would pay Mr. Bierle and there would be no expense to Sedlacek.

The appellant further claims that fraud was practiced upon Mr. Sedlacek because Mr. Bierle attempted to represent both his clients and Mr. Sedlacek at the same time. Sedlacek's testimony was that he asked Mr. Bierle about a $1,000 life insurance policy that he had for his wife, and Mr. Bierle offered to write a letter to the company to collect it and the letter was typed by Mr. Bierle and signed by Mr. Sedlacek and mailed by Mr. Bierle's secretary. While we do not sanction the attorney's conduct in writing the letter in this situation, we do decide that such infraction in comparison to the whole transaction did not amount to fraud, deceit or misrepresentation. This letter was not written on the attorney's letterhead stationery and the letter merely recited that certain things were enclosed and asked that payment be made. Sedlacek further claimed that Mr. Bierle offered to draft a will for him but such was not done. Mr. Bierle denied having made such offer. It is therefore unnecessary to decide whether or not an offer was made since no will was drafted and appellant has not shown in what way Sedlacek was prejudiced or induced to surrender legal rights and we are unable to see how any fraud resulted.

Appellant next claims fraud in that Mr. Bierle failed to disclose to Mr. Sedlacek that two causes of action could be brought against Sacred Heart Hospital, that is, a death action and a survival action. We again find little merit in this contention. The petition for letters of special administration and the petition for order authorizing compromise both having been signed by Stanley Sedlacek and he is presumed to have read the same, and there is nothing in the record to show he did not read them, clearly show that the purpose of the proceeding was to settle in full any claim whatsoever arising under the provisions of SDC 1960 Supp. 37.22 and to settle and compromise any claim that may have survived the death of the decedent. Even if Mr. Sedlacek did not appreciate the difference in the two causes of action, we fail to see how any prejudice could have resulted to Mr. Sedlacek in view of the fact that the decedent's doctor testified that the decedent did not suffer any conscious pain and suffering as result of the overdose.

■ We need not rest our decision solely upon the ground that there was no fraud. The petition to vacate and set aside was not made until approximately 21½ months after the order authorizing compromise and decree of distribution were made and filed. SDCL 15-6-60(b) requires that the motion be made within a reasonable time and not more than one year after the judgment, order or proceeding was entered or taken. This is not the type of case where appellant would be entitled to bring an independent action where the one-year limitation would not apply. Gifford v. Bowling, 86 S.D. 615, 200 N.W.2d 379. Relief by way of an independent action is available only under rather limited circumstances. Dunham v. First National Bank in Sioux Falls, 86 S.D. 727, 201 N.W.2d 227.

■ Appellant next claims there was fraud practiced upon the Court by Mr. Bierle. Gifford v. Bowling, supra, sets forth what is necessary to constitute fraud on the Court. The record in the present case shows that Mr. Bierle presented Judge Welter with his entire file and the facts were discussed in detail for approximately an hour or an hour and a half. The medical records and autopsy report were given to the judge to read. It is clear that this was not just a paper signing transaction. Although Mr. Sedlacek did not appear before the County Judge and Mr.

Bierle presented the estate papers to the Court, we find no fraud upon the Court. The orders and decrees entered by the Court were as prayed for by Sedlacek.

■ Petitioner next contends that the five minor children were entitled to be represented by legal guardian to protect their rights and that the Court did not appoint a guardian until the probate was terminated and that would render any acts null and void as to such minor children. A further review of the facts is necessary. When the proposed settlement was discussed with the County Judge by Mr. Bierle the County Judge indicated that it would be necessary to have a general guardian appointed for the children prior to distribution to the children being made and Mr. Bierle agreed and said that he would prepare the necessary guardianship papers and have Stanley Sedlacek appointed guardian. Stanley Sedlacek, as special administrator, was required to represent all persons interested in the estate which includes the minor children. Appellant cites no cases where failure to appoint a guardian in this situation would make the County Court's acts null and void. There was no conflict of interest between Mr. Sedlacek and his minor children as to what the amount of the settlement should be as both were interested in obtaining the largest settlement possible.

■ Appellant claims that the five minor children were entitled to be represented by an attorney at law to protect their rights and the Court should have appointed an attorney under SDCL 30-1-17. The appointment of any attorney in this proceeding was discretionary. No one ever requested that counsel be appointed for the minor children. Mr. Bierle claimed he had discussed the problem with the County Judge and the County Judge concluded it was not necessary to appoint counsel for the children. The County Judge testified there was no discussion about appointing counsel, only appointing a guardian. While we would recommend to a trial court that it give serious consideration to the appointment of an attorney to represent the interests of minors in any proceeding, where the minors do not have a general guardian, where the trial court believes that what may be in the best interests of the children may not be brought out by the parties, we hold that the Court did not abuse its discretion in not appointing counsel in this case. There was no prejudice to the

estate and Sedlacek as the general guardian of the minor children, the appropriate party to raise this issue, is not a party to this action.

Appellant claims that the proceedings of the County Court were null and void because there are no sufficient statutory grounds existing for the appointment of special administrator in this case, and that a special administrator's sole and exclusive power in this state is the preservation of assets and he has no power or authority to distribute the assets of the estate ex parte. Neither the record of the proceedings nor appellant's briefs point out in what particulars the statutes of the State of South Dakota were not complied with. SDCL 30-10-1 provides for the appointment of a special administrator. This statute generally provides that a special administrator may be appointed when there is a delay in granting letters testamentary or of administration or where no application is made for such letters, or in any case where on account of immediate need or urgency the Court is satisfied that it would be in the best interests of the estate to appoint a special administrator. The special administrator may exercise such powers as may be necessary for the preservation of the estate and may commence or maintain or defend suits and other legal proceedings and exercise such other powers as are conferred upon him by his appointment. The order appointing Mr. Sedlacek as special administrator conferred upon him the authority to settle the survival action and the wrongful death action. It is our holding that the County Court acted within its powers in making the appointment of the special administrator. Porter v. Mad Bear, 76 S.D. 408, 79 N.W.2d 443. Respondents cite Campbell v. Duncan, 60 S.D. 38, 242 N.W. 916 as authority for the special administrator to distribute assets directly to the beneficiaries. We need not decide whether Mr. Sedlacek as special administrator had the power or authority to distribute the assets of the estate ex parte. Appellant's right to relief in this proceeding depends upon whether we set aside the order authorizing compromise. If we refuse to set aside such order authorizing compromise our granting or refusing to set aside the decree of distribution and final discharge of special administrator is of little consequence. Further, there is no showing how the estate was prejudiced even if the special administrator lacked authority. In Re Palm's Estate, 210 Minn. 87, 297 N.W. 765.

We have reviewed the other assignments of error made by appellant and find them to be without merit. The judgment of the trial court is affirmed.

WINANS, J., concurs.

WOLLMAN, J., and HANSON, Ret., J., concur specially with opinion.

HERSRUD, Cir. J., dissents.

EVANS, Cir. J., sitting for BIEGELMEIER, Chief Justice, disq.

HERSRUD, Cir. J., sitting for DOYLE, J., disq.

HANSON, Ret. J., sitting for DUNN, J., disq.

WOLLMAN, Justice (concurring specially).

I agree that the petition to vacate and set aside the judgment under the provisions of SDCL 15-6-60(b)(3) is barred by the one-year limitation period set forth in the statute, that the judgment was not void within the meaning of SDCL 15-6-60(b) (4), and that appellant is not entitled to have the judgment vacated under the provisions of SDCL 15-6-60(b)(6). I also agree that the conduct of respondent's counsel did not constitute fraud upon the county court within the meaning of the last paragraph of SDCL 15-6-60(b). See Gifford v. Bowling, 86 S.D. 615, 200 N.W.2d 379.

My concurrence should not in any way be construed as an approval of the manner in which the wrongful death claim was settled by counsel for the hospital with unrepresented claimants, including minor children. At the very least, the claimants should have been required to appear at the time the petition to make a compromise settlement was considered by the court so that the court could have questioned them personally on all aspects of the proposed settlement, including the question of possible representation by counsel. I find counsel's failure to have claimants present

at the time the petition was presented to the county judge to be inexplicable on the face of the record.

I am authorized to state that Justice HANSON joins in this special concurrence.

HERSRUD, Circuit Judge (dissenting).

I agree with the special concurrence with reference to the one-year statute of limitations as to SDCL 15-6-60(b)(3) and that the appellant is not entitled to have the judgment vacated under the provisions of SDCL 15-6-60(b)(4). I cannot agree with the reference to SDCL 15-6-60(b)(6) that there is not ample reason to justify relief from the operation of the judgment as to the minor children of the decedent.

This wrongful death claim was settled by hospital counsel appearing before the court alone. The minors were not represented in any manner. They had a real interest, having lost their mother as a result of a lethal overdose of medication. The hospital counsel settled the case with the husband, who was without counsel and who was under the pressure of hospital bills and doctor bills of considerable amounts. The settlement would make it possible for him to settle these debts. As a result the settlement was designed to give each child $1,000 and the husband $10,000. One of the children was afflicted with cerebral palsy and mental retardation. To leave minors at the mercy of a debt-ridden parent before whom a debt-satisfying award is dangled is not realistic.

I believe it to be within the power and spirit of SDCL 15-6-60(b)(6) to require relief. The minors were entitled to and should have received the benefit of counsel. Legal relationships and responsibilities are not static but constantly evolving. Our courts have a responsibility to protect minors and this case proves that we cannot rely on a parent alone but must erect guidelines, if not by our courts, at least by the legislature.

I respectfully dissent.