KUEHN AND MAIERHAUSER, Appellants v.
FIRST NAT'L BANK IN SIOUX FALLS, et al., Respondents

(238 N.W.2d 490)

(File No. 11475. Opinion filed January 22, 1976)
Petition for rehearing denied February 27, 1976

George A. Bangs of **Bangs, McCullen, Butler, Foye & Simmons**, Rapid City, for appellants.

E. G. Jones of **Jones & Matthews**, Sioux Falls, for respondent, First National Bank.

Louis R. Hurwitz of **Davenport, Evans, Hurwitz & Smith**, Sioux Falls, for respondent, Crippled Children's Hospital and School.

James R. Becker of **May, Johnson & Burke**, Sioux Falls, for respondent, South Dakota Children's Home Society.

Tom Lehnert, Asst. Atty. Gen., Pierre, for respondent, "An Unknown Maternity Hospital."

BIEGELMEIER, Justice.[*]

Max A. Kuehn died leaving a last will under which, after some bequests, the residue of his estate was left in trust to pay the income to certain relatives during their respective lifetimes, with the remainder over to three charitable beneficiaries in the event that Martha Kuehn Maierhauser, the decedent's granddaughter, should die without issue. The First National Bank (Bank or Trustee Bank herein) and Max A. Kuehn, Jr., a son of decedent and an income beneficiary during his lifetime, were named as trustees. Following the death of Max A. Kuehn, Jr. on September 11, 1971, the Bank became the sole trustee and Jane S. Kuehn, widow of Max A. Kuehn, Jr., and her daughter, Martha Kuehn Maierhauser, herein sometimes referred to as petitioners, became and were during the time here involved the sole income beneficiaries entitled to such income.[1]

---

[*] Retired Supreme Court Justice acting pursuant to SDCL 16-1-5.

1. Following the deaths of petitioners, Jane S. Kuehn and Martha K. Maierhauser, if the latter should die without issue, remaindermen of the trust estate are three charitable institutions, two of which—a crippled children's hospital and a children's home—are designated specifically by their full names, and an unnamed and unchosen maternity hospital that may be operated within certain limitations by a charitable organization in or near Sioux Falls, South Dakota. It is not shown or claimed that such maternity hospital now exists, rather, it appears that such contingent beneficiary does not now exist.

On October 9, 1973, the Trustee Bank filed its Fourteenth Annual Account titled "In the Matter of the MAX A. KUEHN, JR. TRUST U/W Max A. Kuehn, Deceased," in circuit court. The court entered an order and notice of hearing on this account fixing October 31, 1973, as the time for hearing thereon. It appears that copies of this order were mailed to petitioners, one of whom resided in Arizona. No appearance or objection having been made, customarily, as a matter of course,[2] the court entered an order on the date of the hearing — October 31, 1973 — approving that account and setting and allowing trustee and attorney fees. Tucked in Exhibit A consisting of ten long, wide accounting sheets — four having two columns of figures and six having nine columns — were entries showing a sale of a tract of land referred to in the account as having been confirmed during the accounting year.

By verified petition dated December 26, 1973, and filed in the circuit court on December 28, 1973, supplemented by a further affidavit, counsel for Jane S. Kuehn and Martha Kuehn Maierhauser stated that they were the sole income beneficiaries of the trust; that upon the death of the survivor of them the trust would go to the issue, if any, of Martha or, if she died without issue, to the named and unnamed contingent beneficiaries; that among the assets of the trust was a one-half interest in certain lands near Sioux Falls originally appraised and inventoried at about $35,000, but which by May 24, 1972, had increased in value to more than $253,000 in accordance with a certificate of appraisal attached thereto signed by two appraisers and addressed to an officer of the Trustee Bank; that this tract had been producing an income of not more than $2,000 per annum, which was substantially less than the current rate of return on trust investments, and that under such facts it became the duty of the Trustee to sell the land and make an allocation of principal and income of the proceeds of such lands when and as they are sold; that 87.95 acres of such land was sold in 1973 for $131,925 of which amount the trust received one-half or $65,962.50 all of which amount the Trustee allocated to principal or corpus; that petitioners did not appear and make objection at the time fixed for hearing on the Four-

---

2. We are not unmindful of SDCL 21-22-22 and 21-22-23.

teenth Annual Account for the reason that they were not then advised from the account and facts concerning their rights or the duties of the Trustee. The petitioners then asked that the order approving this account be vacated and set aside for the exclusive purpose of allowing the court to consider the appropriate allocation as between principal and income of the proceeds of such sale and the distribution of an appropriate share of the net sales to the income beneficiaries. Several sections of Restatement, Second, Trusts[3] and other authorities were urged in support of petitioners' contention.

To this on February 4, 1974, the Trustee filed a thirteen-page verified response and petition which requested the court to reject the petitioners' prayer and also to determine the authority of the Trustee regarding the disposition of the remaining trust estate.[4] Formal objections incorporating the Trustee's response were filed by the named contingent charitable beneficiaries. The

---

3. Sections 240 and 241, and many other authorities are cited in support of petitioners' claims. To place the argument in clearer perspective these sections, without the comments, are quoted in full:
"§ 240. Unproductive Property
Unless it is otherwise provided by the terms of the trust, if property held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary produces no income or an income substantially less than the current rate of return on trust investments, and is likely to continue unproductive or underproductive, the trustee is under a duty to the beneficiary entitled to the income to sell such property within a reasonable time."
"§ 241. Allocation On Delayed Conversion
(1) Unless it is otherwise provided by the terms of the trust, if property held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary is property which the trustee is under a duty to sell, and which produces no income or an income substantially less than the current rate of return on trust investments, or which is wasting property or produces an income substantially more than the current rate of return on trust investments, and the trustee does not immediately sell the property, the trustee should make an apportionment of the proceeds of the sale when made, as stated in Subsection (2).
(2) The net proceeds received from the sale of the property are apportioned by ascertaining the sum which with simple interest thereon at the current rate of return on trust investments from the day when the duty to sell arose to the day of the sale would equal the net proceeds; and the sum so ascertained is to be treated as principal, and the residue of the net proceeds as income.
(3) The net proceeds are determined by adding to the net sale price the net income received or deducting therefrom the net loss incurred in carrying the property prior to the sale.

4. In the event the court denied the petition the Trustee then withdrew this request.

court set February 22, 1974, for hearing on the issues presented. The foregoing is but an outline of the procedural aspects of the controversy; further reference of facts that may affect its disposition may be gleaned from the extensive settled record of over 400 pages of the Max A. Kuehn Estate, the Max A. Kuehn, Jr. Trust and the Carter A. Kuehn Trust, U/W of Max A. Kuehn, deceased, as well as the title to the properties originating from the Martin J. Kuehn Estate, and the extensive briefs which make brevity in their explanation difficult.

It appears that Max A. Kuehn died April 26, 1957, owning a half interest in three farms adjoining Sioux Falls and fractional interest in two buildings. Martin Kuehn, his brother, had died in 1952 owning the other half interest in the three farms and a fractional interest in the two buildings. Martin's will devised his half interest as follows: ¼ each to Andrew and Curtis Kuehn, nephews of Max, Sr. and Martin; ¼ to respondent Trustee in trust for a son of Max A. Kuehn, Sr., Carter A. Kuehn, which fraction is now held under the Katherine Kuehn Memorial Trust set up by Martin's will; and the last ¼ to the same Trustee Bank in trust for Max A. Kuehn, Jr., another son of Max A. Kuehn, Sr., which since December 7, 1971, has been owned by Martha Kuehn Maierhauser, one of the petitioners herein.

The trust estate under the will of Max A. Kuehn, Sr., was held and operated as two separate trust parcels: the Carter trust and the Max, Jr. trust. On the death of Carter without issue in 1960, the assets of the parcel held in trust for his benefit were transferred and combined with the Max A. Kuehn, Jr. trust which now holds this interest. The above described title changes, the different interests, times and accounting procedures resulted in a rather complex, lengthy and extended record, familiar to the experienced and capable Trustee and its attorney who had lived with the trusts since their origin, but some problem to one not so situated. This is especially true with reference to figures in the accounts which indicated that the Trustee was allocating all the proceeds of the sales of the real property so as to be held for distribution to the contingent and charitable beneficiaries rather than to those who were related by blood or marriage to the creators of the trusts. The Fourteenth Annual Account, which

the court approved on October 31, 1973, contained, among other things, the receipt of $64,087.50 from the sale to the City of Sioux Falls of a one-half interest in 85.45 acres and the receipt of $1,875 from the school district for a one-half interest in 2.5 acres. It appears that neither the income beneficiaries nor their counsel were at that time aware that they had any claim upon such proceeds as income. The report of the Trustee makes no reference to either the values at which these properties were appraised at the early stages of the trusts or to the current market value of the farm holdings so as to call attention to the great difference in those values, the income from past rentals as farm property or prospective income from a prudent investment of those proceeds.

On November 15, 1973, this court handed down its decision and opinion in In Matter of Estate of Kuehn, deceased, 1973, 87 S.D. 569, 212 N.W.2d 356, involving a will which established a trust similar to the one in the Max A. Kuehn, Sr. will with which we are now concerned. On December 28, 1973, the income beneficiaries filed their verified petition seeking to vacate the order of October 31, 1973, for the sole purpose of allowing the court to consider an appropriate allocation of principal and income of the proceeds of the sale of the real estate. After a hearing held February 22, 1974, the circuit judge issued a memorandum opinion on April 2, 1974, and on April 10, 1974, the court entered an order in accord therewith denying the petition. Petitioners appeal from the original order of October 31, 1973, and the order of April 10, 1974, denying their petition.

The circuit judge's opinion points out that RCP 58 (SDCL 15-6-58) states: "A judgment or an order becomes complete and effective when reduced to writing, signed by the court or judge, attested by the clerk and filed in his office," and that, while RCP 81(a) and Appendix A thereto provide that SDCL 21-22 (administration of trusts) is not governed by the Rules of Civil Procedure (RCP) insofar as it is inconsistent or in conflict with this chapter, "[t]here being no provision of such nature in SDCL 21-22, [RCP 58, supra, was] applicable [to the pending petition.]" After citing SDCL 15-6-60(b), the trial judge concluded "[t]he reasons advanced do not, in my opinion, justify the vacating of a previous order of the Court." The trial judge made no comment on § 241,

Restatement, Second, Trusts, and entered the aforesaid order denying the petition. We believe the circuit court abused its discretion in denying the petitioners' motion.

SDCL 15-6-60(b) so far as applicable here provides:

"On motion and upon such terms as are just, the court may relieve a party * * from a final judgment, order, or proceeding for the following reasons:

(1) Mistake, inadvertence, surprise, or excusable neglect

    \*      \*      \*      \*      \*      \*

The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the  * * * order * * * was entered * * *."

The source note thereto shows this or a similar rule has been in effect in this jurisdiction since territorial days and has been before the court many times. See Davis v. Interstate Motor Carriers Agency, 1970, 85 S.D. 101, 178 N.W.2d 204, where the court stated that each case of this character must be determined from the particular facts and circumstances. The neglect must be excusable, yet the term "excusable neglect" has no fixed meaning. In Davis the court wrote that "RCP 60(b) gives trial courts a wide discretion to relieve of default which should 'be exercised by them in the same liberal spirit in which the section (now Rule) was designed, in furtherance of justice and in order that cases may be tried and disposed of upon their merits.'" Gunvordahl v. Knight, 1951, 73 S.D. 638, 47 N.W.2d 561; Uhlich v. Hilton Mobile Homes, 1964, 80 S.D. 478, 126 N.W.2d 813; Ackerman v. Burgard, 79 S.D. 119, 109 N.W.2d 10. This liberal spirit runs all through the rules (which are Chapter 15 of SDCL), and SDCL 15-6-60(b), supra, finds further support in the wording of SDCL 15-6-1 which states:

"This chapter * * * shall be construed to secure the just, speedy and inexpensive determination of every action."

That determination, as the above decisions indicate, is preferred to be made on the merits. Davis v. Interstate Motor Carriers Agency, supra.

Summarizing, petitioners claim that the record and petitioners' affidavits show the Fourteenth Annual Account was set for hearing and notice was mailed to petitioners and others over ten days prior to the hearing; that upon the death of the survivor of them, the corpus will go to Martha Kuehn Maierhauser or, if she dies without issue, to the corporate charities; that among the assets is a half interest in lands near Sioux Falls originally appraised at $35,000 which has increased in value to more than $250,000 in accord with a certificate of appraisal which Trustee had provided but not filed; that the land was producing an income of $2,000 per annum for the trust which was substantially less on the increased value than the current rate of return on approved trust investments; that in accord with § 241, Restatement, Second, Trusts, it became the duty of the Trustee to make an allocation between the principal and income from the proceeds of a sale; that during 1973 such sales were made of part of the land for which Trustee received $65,962.50, all of which it allocated to the corpus; that trust beneficiary Martha lived in Arizona and her attorney had had no opportunity for personal contact with her since receiving the copy of the account, their only communication being by phone or letter; that neither Martha nor Jane was then aware that she might have some legal claim upon the proceeds of the land sale, and, likewise, counsel was unaware of such claim by reason of the failure of the Trustee to disclose or file the new appraisement it had procured so as to show the greatly enhanced value and resultant low income production of the land in relation thereto; that because of a lack of any pertinent decisions in this or neighboring states they did not make objections to the account; that not until two weeks after the account was approved (at which time the Nell Carter Kuehn appeal called attention to the favor in which living relatives as income beneficiaries are viewed) was investigation made of the facts not shown in the report and the law claimed applicable thereto; that petitioners' counsel immediately on November 17, 1973, wrote letters to an officer of the Trustee Bank advising it of their claim, followed by an interchange of letters between counsel for the Trustee and contingent

beneficiaries; that by reason of the apparent failure to arrive at some settlement of the claim, the pending petition was filed December 28, 1973.

■ We believe under the facts herein present that the neglect of petitioners was excusable and, as they moved promptly to vacate the order approving the account, the circuit court should have granted that relief. This result is in furtherance of justice where, as here, the petition affects no current distribution of property but an allocation contingent in the future, and it seeks no claim or liability against the Trustee.

■ We have assumed, as did the circuit court, that SDCL 15-6-60(b) applied to this proceeding. It may be that the general principles there do apply, yet it is somewhat difficult to fit the procedure of setting aside a judgment in an action resulting in a final judgment with its filing of a proposed pleading, an affidavit of merits, etc., to an application of this nature in the administration of trust estates.[5] Most if not all of the proceedings in the administration of trust estates in SDCL 21-22 are in a court of equity without the usual pleadings in an action, trials by jury, etc. Lacking a statute such as SDCL 15-6-60(b) extending equitable principles to judgments at law, the court in the administration of trusts is acting as a court of equity with authority to exercise its powers as such. That would include those mentioned in but not necessarily limited by SDCL 15-6-60(b). Where a proposed answer setting up a defense on an action may be required in some proceeding to set aside a judgment, here that is fulfilled by a pleading or showing that the order challenged was not under the facts consonant with law.

Counsel for both petitioners and the Trustee have extensively cited and discussed §§ 231, 232, 240 and 241 of Restatement, Second, Trusts and many other authorities that may affect the income beneficiaries when it is heard on the merits. However, in respondents' brief, counsel for the Trustee asserts that the circuit court's ruling "was directed solely to refusing to vacate the prior final Order of the Court and did not purport to make any

5.   Cf. In re Skelly's Estate, 1907, 21 S.D. 424, 113 N.W. 91.

determination on the merits of Petitoners' application." We are in agreement with that contention, and therefore, as the trial court did not decide the controversy on the merits, we do not reach that issue and indicate no opinion on it, except as here indicated. Petitioners have presented a debatable question for resolution by the circuit court, and they are entitled to argue the merits on this or such additional record as they are disposed to make, unhampered by the issue and prior doubt of vacating of the order approving the account. Having concluded, as we do, that the neglect of petitioners was excusable, it is then only necessary to permit vacation of the order to further show of record or on its face[6] that the movants' claim or defense was "honestly debatable under the law of the land." See SDCL 16-16-18. That issue is to be determined at the hearing on the merits when so held.

Mention should be made that, as petitioners point out, neither the Trustee nor the contingent beneficiaries have changed their position nor do petitioners seek to surcharge or hold the Trustee liable.

At the hearing on the petition the circuit court may consider petitioners' request for allowance out of the corpus of the trust of reasonable fees and expenses of counsel. The order denying the petition to vacate the order approving the Fourteenth Annual Account dated October 31, 1973, is reversed with instructions to vacate that order.

WINANS and WOLLMAN and COLER, Justices, and JONES, Circuit Judge, concur.

BIEGELMEIER, Retired Supreme Court Justice, sitting for DUNN, Chief Justice, disqualified.

JONES, Circuit Judge, sitting for DOYLE, Justice, disqualified.

---

6.   In footnote 5 of the Davis opinion, cited supra, reference is made to the necessity and function of a proposed answer to raise an issue in an action at law.