**WILLIAMS SERVICES, Plaintiff and Appellee,**

v.

**Rory SHERMAN, d/b/a United Standard & United Standard Distributors of Wyoming, Defendant and Appellant.**

**No. 17537.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 13, 1992.

Decided Nov. 10, 1992.

Mark V. Meierhenry of Danforth, Meierhenry & Everist, Sioux Falls, for plaintiff and appellee.

Richard A. Johnson of Strange, Farrell, Johnson & Casey, Sioux Falls, for defendant and appellant.

McKEEVER, Circuit Judge.

Rory Sherman (Sherman) appeals from an order by the trial court amending a judgment more than one year after it was entered. We affirm.

## STATEMENT OF FACTS

Williams Service (Williams), a partnership, entered into a contract with United Standard Distributors of Wyoming (USD of Wyoming), a distributorship of water conditioning equipment, on February 22, 1985. The agreement provided that Williams would receive $165 for each water conditioning unit it installed and serviced for USD of Wyoming. On August 5, 1987, Williams commenced a debt collection action against USD of Wyoming and Sherman, the president and sole shareholder, for unpaid services performed according to contract terms in the amount of $5,505.

At trial, Sherman's testimony established that USD of Wyoming was an active business entity which held regular corporate meetings, maintained corporate records and observed corporate formalities.[1] Based upon this testimony the trial court declined to pierce the corporate veil and hold Sherman personally liable for the debt. Judgment was entered for Williams and against USD of Wyoming on September 21, 1988, for $5,505 plus costs and interest.

On December 27, 1988, Williams filed a petition to enforce the judgment against USD of Wyoming in Douglas County, Nebraska. It also filed a motion to require an undertaking by USD of Wyoming, as well as a motion for order restraining USD of Wyoming and Sherman from disposing of any assets. The trial court granted these

---

1. Sherman's testimony at trial:
   Q: United Standard Distributors of Wyoming regularly holds corporate meetings?
   A: Yes.

   Q: Obviously, maintains some corporate records?
   A: Yes.

motions. A subpoena was then issued requiring Sherman to appear at a debtor's examination in his capacity as USD of Wyoming's president. He failed to appear at the scheduled hearing.

On January 30, 1989, Williams served but did not file a motion to amend judgment upon Sherman and his counsel. This motion sought to hold Sherman personally liable for the judgment because he allegedly transferred USD of Wyoming's assets and property to United Standard of Nebraska (USD of Nebraska), a distributor corporation wholly owned by Sherman and incorporated in Nebraska, for the sole purpose of defeating the judgment. The motion was served again but not filed on February 16, 1989. Finally, on February 26, 1990, approximately seventeen months after the original judgment was entered, Williams filed its motions.

The trial court ordered Sherman to produce USD of Wyoming's financial records on April 6, 1990. Williams renewed its motion to amend judgment on June 25, 1990. The trial court issued another order on August 24, 1990, requiring USD of Wyoming and Sherman to produce additional financial information.

On November 6, 1990, Williams conducted a debtor's examination of Sherman in his capacity as president of USD of Wyoming. Sherman's testimony at the 1990 debtor's examination revealed that USD of Wyoming transferred all of its assets to USD of Nebraska by April 17, 1987.[2] His testimony also established that USD of Wyoming failed to generate any income since August 21, 1988, one month before judgment was entered against USD of Wyoming.

At the hearing on Williams' motion to amend judgment, the court reviewed the debtor's examination, heard Sherman's testimony under oath and listened to counsels' oral arguments. The trial court amended the judgment by memorandum letter opinion on March 8, 1991. The court concluded that Sherman "has been playing loose with

the court" based upon the difficulties in obtaining USD of Wyoming's financial information and Sherman's testimony at the debtor's exam. The judgment was amended to hold Sherman individually liable to Williams for the debt. It is from this judgment Sherman appeals.

## DECISION

### ISSUE

WHETHER THE TRIAL COURT ERRED IN AMENDING THE JUDGMENT TO HOLD SHERMAN PERSONALLY LIABLE MORE THAN ONE YEAR AFTER THE ORIGINAL JUDGMENT WAS ENTERED?

#### Analysis

Sherman contends that Williams' motion to amend the judgment is based upon fraud, or, in the alternative, fraud upon the court and must be treated as a motion to vacate under SDCL 15–6–60(b) because Williams neither filed a motion for new trial nor appealed the trial court's judgment. Sherman further contends that, as a motion to vacate, Williams' motion must fail because it was not timely filed within the one year time limit requirement of SDCL 15–6–60(b)(3), and, in the alternative, Williams failed to establish that Sherman committed fraud upon the court, upon which a reasonable time limit for making the motion is allowed.

Williams contends that the motion was served within one year of the judgment's entry thus satisfying both the one year and the reasonable time requirements of SDCL 15–6–60(b). In support of its motion to vacate, Williams contends that Sherman committed fraud upon the court, and the court properly exercised its discretion to amend the judgment and hold Sherman personally liable for the debt of his 100 percent owned corporation, USD of Wyoming.

In its motion to amend judgment, Williams asked the court to modify the judgment to hold Sherman personally liable

2. Thus, all assets were transferred prior to Williams' original debt collection action and Sherman's testimony therein.

for the debt. Sherman's testimony at trial established that USD of Wyoming held regular corporate meetings and maintained corporate records, that Sherman was 100 percent owner of the shares in USD of Wyoming, and that USD of Wyoming was an active corporate entity. However, difficulties encountered by counsel in obtaining information about USD of Wyoming's financial affairs and the information elicited from Sherman at the debtor's examination show that USD of Wyoming is no longer in existence. In fact, the bulk of USD of Wyoming's assets were transferred into a new Nebraska corporation (USD of Nebraska), owned 100 percent by Sherman, on April 26, 1988. Based upon this information, the trial court found that Sherman "has been playing loose with the Court."

The trial court, in response to the motion, vacated that portion of its original order finding no personal liability for Sherman to Williams. Vacation of judgments is governed by SDCL 15–6–60(b). The statute provides:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>
> &ast; &ast; &ast; &ast; &ast; &ast;

(6) Any other reason justifying relief from the operation of the judgment.[3]

■ A motion for relief based upon SDCL 15–6–60(b) is addressed to the sound discretion of the trial court and will not be disturbed on appeal except for abuse. *Gustafson v. Gustafson*, 453 N.W.2d 852 (S.D.1990). The trial court's discretion is to be exercised liberally in accord with legal and equitable principles in order to promote the ends of justice. *City of Lemmon v. U.S. Fidelity & Guaranty*, 293 N.W.2d 433 (S.D.1980); *Kuehn v. First Nat. Bank in Sioux Falls*, 90 S.D. 96, 238 N.W.2d 490 (1976).

■ The purpose of SDCL 15–6–60(b) is to "preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts." *Gold Pan Partners, Inc. v. Madsen*, 469 N.W.2d 387, 391 (S.D.1991); *Peterson v. LaCroix*, 420 N.W.2d 18, 19 (S.D. 1988) (citing *Rosebud Sioux Tribe v. A. & P. Steel, Inc.*, 733 F.2d 509, 515 (8th Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984), *on remand*, 874 F.2d 550 (8th Cir.1989)). This statute provides for extraordinary relief upon a showing of exceptional circumstances. *Clarke v. Clarke*, 423 N.W.2d 818 (S.D.1988); *Haggar v. Olfert*, 387 N.W.2d 45 (S.D.1986).

Besides requiring exceptional circumstances, SDCL 15–6–60(b) has a built-in time limitation. Any motion for relief pursuant to subsections (1), (2) or (3) must be

---

**3.** In full, SDCL 15–6–60(b) provides:
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
(1) Mistake, inadvertence, surprise, or excusable neglect;
(2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under § 15–6–59(b);
(3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
(4) The judgment is void;
(5) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
(6) Any other reason justifying relief from the operation of the judgment.
The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. Section 15–6–60 does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided by statute or to set aside a judgment for fraud upon the court.

made within one year after the judgment was entered. SDCL 15–6–60(b). Therefore, a motion which alleges fraud must be made "not more than one year after the judgment, order or proceeding was entered or taken," while a motion alleging fraud upon the court must be made within a "reasonable time." SDCL 15–6–60(b). Consequently, we will first examine Williams' argument that Sherman's action constituted fraud upon the court.

## I. Fraud upon the court

■ Fraud upon the court is that type of fraud that "defile[s] the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task...." *Gifford v. Bowling*, 86 S.D. 615, 200 N.W.2d 379, 384 (1972) (quoting 7 Moore's Federal Practice ¶ 60.33). *See also Matter of Estate of Althen*, 429 N.W.2d 745 (S.D.1988). In order to set aside a judgment because of fraud upon the court under Rule 60(b),

> it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision. Courts have found fraud upon the court only where there has been the most egregious conduct involving a corruption of the judicial process itself.

*Gifford*, 200 N.W.2d at 384. Examples of such conduct include "bribery of judges, employment of counsel to 'influence' the court, bribery of the judiciary, and the involvement of an attorney (an officer of the court) in the perpetration of fraud." *Id.* None of these are alleged in this case.

Williams contends that Sherman's failure to disclose USD of Wyoming's true financial and corporate status amounts to fraud upon the court. The fraud Williams alleges is not fraud in the procurement of a judgment (*See Wooster v. Wooster*, 399 N.W.2d 330, 334 (S.D.1987)), but rather Sherman's nondisclosure of his corporation's true status. Nondisclosure by a party is not enough to support a finding of fraud upon the court. 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2870 (1973). While Sherman's nondisclosure was sufficient to sustain a finding of

misrepresentation or fraud under SDCL 15–6–60(b)(3), it does not rise to the level necessary to constitute an unconscionable scheme to corrupt the judicial process itself. Consequently, Williams' allegation that Sherman committed fraud upon the court so as to allow vacating a judgment as provided for in SDCL 15–6–60(b) by independent action was not established.

## II. Relief from judgment based on fraud under SDCL 15–6–60(b)(3)

■ Williams served his first motion to amend judgment upon Sherman and his counsel on January 30, 1989, approximately four months after judgment was entered. Williams argues that since service was made within the one year time limit prescribed by SDCL 15–6–60(b), the motion was timely made. He alleges that filing, which took place seventeen months after judgment, is irrelevant in computing the appropriate time under the statute.

SDCL 15–6–5(d) commands that all papers, excluding trial briefs, "if not filed before service, be filed with the court, together with proof of such service, *forthwith* upon such service." (emphasis added). This statute was amended in 1981 (a codification of Supreme Court Rule 72–4 of January 1, 1973, amending RCP Rule 5(d)) to add the following language:

> The foregoing requirement of filing applies to the notice of filing of an order and the notice of entry of a judgment together with proof of service thereof, both of which shall be filed forthwith; if not filed within ten days after service thereof, the time of service shall be deemed to be the date of filing of the notice and proof of service.

SL 1981, ch. 379.

■ Sherman claims that since Williams did not file within ten days of service, this language mandates the date of service be deemed the date of filing. Therefore, he argues, the date of service becomes February 26, 1990, outside the one year provision of SDCL 15–6–60(b)(3).

This argument fails. First of all by its clear language, the ten day requirement refers only to the notice of filing of an order and the notice of an entry of judg-

ment. There is no indication that the ten day requirement is intended to apply to any other motions. SDCL 15–6–5(d) further provides:

> In the event of failure to file any paper required to be filed as herein specified, the adverse party upon proof of the omission so to file shall be entitled without notice to an order requiring such papers to be filed within a time to be specified in the order, and such order may likewise provide that upon such failure so to file such papers, the action or proceeding shall be dismissed without prejudice and that no new action or proceeding may be commenced without payment of reasonable terms to be fixed by the court.

In the event a paper is not filed "forthwith" after service, the adverse party has a remedy. It may seek an order to compel filing or may seek dismissal. Sherman and his counsel had actual knowledge of the motion when it was served on January 30, 1989. Sherman could have moved to compel filing pursuant to SDCL 15–6–5(d), but apparently chose not to exercise this right. Sherman was not prejudiced as a result of the failure to immediately file.

■ Also, this court rejected Sherman's argument in *Emblem Mfg. Co., Inc. v. Discovery Corp.*, 90 S.D. 575, 243 N.W.2d 799 (1976). There the summons and complaint were served on defendant on January 28, 1975. Plaintiff filed the complaint nearly six weeks later. Default judgment was entered the same date. Defendant then served and filed an answer and a motion to set aside the judgment. Defendant claimed that the time for answering ran from the date of filing—not the date of service (despite SDCL 15–6–12(a) which requires that the "defendant shall serve his answer within thirty days after the service of the complaint upon him")—since the filing occurred more than ten days after service. This court rejected that argument, finding that the time period for answering commenced when the service was made. *Id.* 243 N.W.2d at 801. Since the defendant did not answer within thirty days of service upon him, he was entitled to no relief from the default judgment. South Dakota civil procedure rules require only that filing

take place "forthwith," not before or contemporaneous with service. *Id.* at 800.

The reasoning of that case applies equally well here. A civil action in South Dakota is commenced when service is made upon the adverse party. SDCL 15–6–3; 15–2–30; 15–2–31. SDCL 15–6–60(b) requires a motion to amend the judgment be made within a reasonable time, at most one year after the judgment. Such a motion is made—the action on that motion is commenced—when it is served upon the adverse party. SDCL 15–6–3.

Williams served the motion to amend judgment approximately four months after judgment was entered, well within the one year provision of SDCL 15–6–60(b)(3). This was sufficient, when coupled with Sherman's misrepresentation of his corporate status, to allow the trial court to amend the judgment under SDCL 15–6–60(b)(3) and hold Sherman personally liable. Therefore, under the fact situation of this case, Williams' failure to file forthwith was not fatal.

## CONCLUSION

■ Since Williams properly motioned for an amended judgment within the one year provision of SDCL 15–6–60(b)(3), the trial court properly considered Williams' allegations of fraud and misrepresentation. Based on the evidence, the trial court did not abuse its discretion in finding that Sherman had committed fraud or misrepresentation justifying an amended judgment. The judgment of the trial court is affirmed.

WUEST, J., and TAPKEN, Circuit Judge, concur.

HENDERSON and SABERS, JJ., concur specially.

McKEEVER, Circuit Judge, for MILLER, C.J., disqualified.

TAPKEN, Circuit Judge, for AMUNDSON, J., disqualified.

HENDERSON, Justice (specially concurring).

Sherman would have the South Dakota courts believe that there is no relationship

between two corporate entities. Wrong. Both corporations had the identical employer identification number, namely 83–0249568 reflected upon a 1986 U.S. Corporation Income Tax Return (for United Standard Distributors, Inc., Cheyenne, Wyoming) and a 1987 U.S. Corporation Income Tax Return (for United Standard Distributors, Inc., Omaha, Nebraska). *See,* Exhibits A and B on file herein. They constitute the "smoking gun" in this case of corporate fraud.

This was a corporate shell-game. Sherman is trying to defraud creditors by frustrating collection of a judgment employing a would-be concept that, in actuality, the two entities are the same. Sherman owned 100% of the stock of a number of corporations. Within this umbrella of "alter ego," we note the inclusion of United Distributors of Wyoming and United Standard Distributors of Nebraska.

Sherman was disrespectful to the courts of South Dakota; when subpoenaed to produce records, he refused to do so. He testified falsely concerning the status of United Standard Distributors of Wyoming. Sherman argued in his brief that he committed no fraud. Here, the essence of his fraud was to testify that United Standard Distributors of Wyoming was a functioning corporation—that it was still in existence. However, Sherman knew (a) the said corporation had closed its bank account (b) failed to file any corporate records with the Secretary of State, as required by law (c) filed no tax return and (d) merged the assets into a non-bona fide corporation. When he raised his hand and took an oath to tell the truth, he knew that months prior thereto, he had implanted his new alter ego, corporate shell in Nebraska to remove the assets from the Wyoming corporation, and conclude its affairs.

Piercing the corporate veil, acting as a Court of Equity, refusing to allow Sherman to use a corporate shell game to defraud creditors, the trial court entered an Amended Judgment. In South Dakota, a party seeking to rely on fraud for affirmative relief (here, Williams Service), has the burden of establishing fraud by a preponderance of the evidence. *Jennings v. Jennings,* 309 N.W.2d 809 (S.D.1981). It is obvious that Williams Service met that burden of proof. This Court has held that fraud under SDCL 15–6–60(b) abolishes the distinction between *extrinsic* and *intrinsic* fraud. *Estate of Sedlacek v. Mount Marty Hospital Ass'n,* 88 S.D. 333, 218 N.W.2d 875 (1974). Under this statute, we, on this Court, following stare decisis, will not disturb the discretion exercised by the trial court unless there exists an abuse of discretion. *Overvaag v. City of Dell Rapids,* 319 N.W.2d 171 (S.D.1982). Clearly, no abuse of discretion exists in this record. Surely, we should promote the ends of justice by estopping Sherman from using fraud as a weapon of unfairness.

Concerning the contention of Sherman that Williams' motion to vacate the judgment must fail because it was not filed within the one year time period, I generally agree with the discourse of the majority opinion; however, I wish to elaborate on my vote to express that pleadings in South Dakota are to be filed forthwith. To hold them in a lawyer's office serves no beneficial purpose. It is sloppy procedure to hold original pleadings in a lawyer's office and it triggers misunderstandings within the Bar and Bench. Judicial personnel's efficiency and the client's interests are best served by having a file which is complete in the county courthouse. Simply put, filing eliminates confusion. Failing to file original pleadings spawns more litigation and wastes the resources of the Unified Judicial System of this state. For all of these reasons, the Legislature passed SDCL 15–6–5(d) mandating that filings of pleadings be filed "... forthwith upon such service."

SABERS, Justice (concurring specially).

I write specially to attempt to confine the rule of this case to the facts of this case. Bad facts tend to make bad law. In my view, it would be a shame if this case becomes the method by which aggrieved parties unilaterally extend the time for appeal from an adverse decision.

Plaintiff obtained a judgment against the defendant corporation but failed to present

sufficient evidence of individual liability. Therefore, plaintiff failed to pierce the corporate veil and the trial court so held. No appeal was taken and the judgment was final. Yet, some 17 months later, motion papers are filed and 29 months later the judgment is opened to provide individual liability. Whatever happened to res judicata and stare decisis?

This situation is somewhat similar to that of *Gold Pan Partners, Inc. v. Madsen* 469 N.W.2d 387 (S.D.1991), where I wrote:

The fact that the judgment from which Julie seeks relief was not entered against Julie, but in her favor and upon her petition, is also troubling. To read Rule 60(b) broadly enough to grant a party relief from a favorable judgment which the party previously pursued opens wide the door to abuse of the rule by those who simply change their mind about what they want after it is too late.

*Id.* at 393 (citations omitted, emphasis in original omitted).